Prewitt, Ins. Com'r, v. Security Mutual Life Ins. Co.
Travelers Ins. Co. v. Prewitt, Ins. Com'r.

CASE 41—ACTION BY THE SECURITY MUTUAL LIFE INS. CO. AND BY
   THE TRAVELERS INS. CO. AGAINST HENRY R. PREWITT, INSURANCE
   COMMISSIONER, FOR AN INJUNCTION COMPELLING HIM TO REVOKE
   AN ORDER SUSPENDING THEIR LICENSE TO TRANSACT BUSINESS IN
   THIS STATE.—DEC. 15.

# Prewitt, Ins. Com'r, v. Security Life Ins. Co.
# Travelers Ins. Co. v. Prewitt, Ins. Com'r.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION NO.
   2—THOS. R. GORDON, JUDGE.

JUDGMENT FOR PLAINTIFF IN FIRST SUIT.  DEFENDANT APPEALS.  RE-
   VERSED.

JUDGMENT FOR DEFENDANT IN SECOND SUIT.  PLAINTIFF APPEALS.  AF-
   FIRMED.

FOREIGN INSURANCE COMPANIES—LICENSE FOR DOING BUSINESS IN
   KENTUCKY—REVOCATION OF LICENSE—STATUTES—CONSTITUTION-
   ALITY.

Kentucky Statutes 1903, section 631, which provides that if
   any foreign insurance company shall, without the consent of
   the other party to the suit brought by or against it in any State
   court, remove the suit to the Federal court, the insurance com-
   missioner shall forthwith revoke its authority to do business in
   the State, is not in conflict with the Federal Constitution, it
   being a reasonable regulation for the protection of the citizens
   of the State, which is authorized to grant and withhold licenses
   to foreign insurance companies as it sees fit.

PIRTLE, TRABUE, DOOLAN AND COX, ATTORNEYS FOR APPELLANT,
   TRAVELERS INS. CO.

## POINTS AND AUTHORITIES.

1. An injunction against a State officer threatening action un-
der an unconstitutional statute is maintainable where complain-
ant's safety and immunity from the hazard of enormous penal-

Prewitt, Ins. Com'r, v. Security Mutual Life Ins. Co.
Travelers Ins. Co. v. Prewitt, Ins. Com'r.

ties makes it remediable only in equity, and renders its remedy
at law inadequate. Bank v. Stone, 88 Fed. Rep., 383 (Harlan,
Taft and Lurton); Met. Life Ins. Co. v. McNall, 81 Fed. Rep.,
888; Mut. Life Ins. Co. v. Boyle, 82 Fed. Rep., 705; etc.

(This question, however, is not raised, the insurance commis-
sioner uniting with us in submission for decision only of the
question of his power.)

2. A State statute requiring surrender or forbearance of a
right of removal or resort to the Federal courts infringes the
Federal Constitution and is unconstitutional and void. See cases
cited under the next succeeding head.

3. A State statute, however contrived, seeking to prevent re-
moval or resort to the Federal courts is unconstitutional and
void, and whenever imposing the requirement of the surrender
or forbearance of the right of such removal or resort as a con-
dition upon admission of a foreign corporation to transact busi-
ness within the State the requirement or permission to transact
business becomes itself void and the corporation at liberty to
transact business without the permit. Com. v. East Tenn. Coal
Co., 97 Ky., 238; Com. v. Jellico Coal Co., 97 Ky., 244; Ins. Co.
v. French, 18 How., 404, L. Ed., xi. 451; Ins. Co. v. Morse, 87
U. S., 20 Wall., 445; L. Ed., 22, 365; Barron v. Burnside, 121
U. S., 186; Sou. Pac. Co. v. Denton, 146 U. S., 202, Book 36,
942; Martin v. B. & O. R. R., 156 U. S., 684, Book 30, 519; Bar-
row S. S. Co. v. Kane, 170 U. S., 100 (42 L. Ed., 964); Blake v.
McClung, 172 U. S., 239 (43 L. Ed., 438); Dayton C. & I. Co. v.
Barton, 183 U. S., 23, 25; L. Ed., 46, pp. 61, 64; Bigelow v. Nick-
erson, 70 Fed., 121; Met. L. Ins. Co. v. McNall, 81 Fed., 888;
Mut. L. Ins. Co. v. Boyle, 82 Fed., 705.

WM. MARSHALL BULLITT FOR APPELLEE SECURITY MUTUAL LIFE
INS. CO.

## POINTS AND AUTHORITIES.

1. Kentucky Statutes, section 573 and 631, are unconstitu-
tional and void, because repugnant to the Constitution and
laws of the United States; and the insurance commissioner
could not take any lawful action thereunder. Commonwealth
v. East Tennessee Coal Co., 97 Ky., 238; Commonwealth v.
Jellico Coal Co., 97 Ky., 246; Norton v. Shelby Co., 118 U. S.,
442; Hildreth v. McIntire, 1 J. J. Marsh., 206; Cooley's Consti-
tutional Limitations, 188.

2. Although a State may exclude a foreign corporation en-

Prewitt, Ins. Com'r, v. Security Mutual Life Ins. Co.
Travelers Ins. Co. v. Prewitt, Ins. Com'r.

tirely, yet if it undertakes to prescribe conditions on which it may enter the State can not—

(1) Make as a condition of its admittance that it will not remove a case to the federal court; nor

(2) Make as a condition of permitting it to remain in the State that it will abstain from removing cases to the Federal court.

In short, a State can not make the right to continue within its limits dependent upon the surrender or abandonment of, or abstention from the right of removal to the Federal court. La-Fayette Ins. Co. v. French, 18 How., 404 (1855); Insurance Co. v. Morse, 20 Wall., 445 (1874); Barron v. Burnside, 121 U. S., 186 (1887); Southern Pacific Co. v. Denton, 146 U. S., 202 (1892); Barrow Steamship Co. v. Kane, 170 U. S., 100 (1898); Blake v. McClung, 172 U. S., 239 (1898).

3. The case of Doyle v. Continental Insurance Co., 94 U. S., 535, is no longer an authority in support of appellant's contention. Doyle v. Continental Ins. Co., 94 U. S., 535 (1876); Barron v. Burnside, 121 U. S., 186 (1887); Commonwealth v. East Tennessee Coal Co., 97 Ky., 238 (1895); Metropolitan Ins. Co. v. McNall, 81 F. R., 888 (1897); Moon on Removal of Causes, 29, 31 (1901).

4. The judgment should be affirmed in accordance with the opinion of this court declaring that so much, and only so much, of Kentucky Statutes, section 631, as provides that if a case is removed to the Federal court the license shall be revoked, is unconstitutional.

HAZELRIGG, CHENAULT & HAZELRIGG, Attorneys for Commissioner.

N. B. HAYS, Attorney-General, and H. R. PREWITT, of Counsel.

## POINTS AND AUTHORITIES.

1. This State has a valid license law and which is not based on any non-enforcible or unconstitutional conditions.

2. The provision against removal to a Federal court is not, as in some States, provided as a condition precedent to the right to a license. Ky. Stat., secs. 634, 631, 649, 657, 761; Franklin Ins. Co. v. L. & A. Packet, 9 Bush, 590.

3. The clause of sec. 631 of our statute was not intended to admittedly, and can not prevent removal of causes. Home Ins. Co. v. Morse, 20 Wall. 445 (22, 367); Commonwealth v. East Tenn. Coal Co., 97 Ky., 238.

4. Notwithstanding this, the statute is a valid exercise of the power of the State to exclude foreign corporations for any reason whatever. The State may withdraw a license at pleasure, as it might refuse the license in the first instance. 13 A. & E. Equity of Law (2d Ed.), 867; Doyle v. Continental Ins. Co., 94 U. S., 535 (24, 148); Barron v. Burnside, 121 U. S., 186 (30, 919).

5. The insurance commissioner may by mandamus be compelled to obey this statute. The People v. Pavey, Auditor, 151, 111, 101.

6. The State has full power to admit or not admit foreign corporations within her borders, except where the business is of a Federal nature. Paul v. California, 155 U. S., 650, 39, 299; 9 Rose's Notes, 143-4; State v. Phipps (Ks.), 18 L. R. A., 662; Fire Association, Philadelphia, v. New York, 119 U. S., 110, 30, 346; The Doyle case not overruled; Marron v. Burnside, supra; United States v. DesMoines, 142 U. S., 546; Pope, &c., v. Gormully, 144 U. S., 238; New Orleans v. Warner, 175 U. S., 147: Fire Association, Philadelphia, v. New York, supra; State v. Phipps (Ks.), supra.

OPINION OF THE COURT BY JUDGE HOBSON.

In the first of the above cases the Security Mutual Life Insurance Company filed its petition in equity, alleging that in the year 1900 it began business in Kentucky, having complied with the requirements of the statutes of the State applicable to foreign insurance companies, the plaintiff being a corporation organized under the laws of the State of New York; that the commissioner then granted it permission to transact the business of life insurance in this State, and it employed a large number of agents, established a large number of agencies throughout the State, expended large sums of money in advertising its business, and acquired a large and profitable business in the State; that in June, 1904, it removed to the circuit court of the United States for the Eastern District of Kentucky, without the consent of the other party, a suit brought against it in one of the circuit courts of the State; and that on September 29, 1904, the

defendant, Prewitt, as Insurance Commissioner, revoked its authority to do business in the State for the sole reason that it had removed the suit referred to to the circuit court of the United States, and refused and still refuses to set aside the revocation. It prayed an injunction requiring the commissioner to annul the revocation of its license and to continue its authority to transact the business of life insurance in the State. The defendant demurred to the petition, his demurrer was overruled, and, he declining to plead further, a judgment was entered as prayed in the petition.

In the other cases the petition is very similar, except that it is there averred that the commissioner has not yet revoked the plaintiff's license, but that he threatens to do so, and, unless enjoined by the court, will revoke it, to the plaintiff's irreparable injury; it being a foreign corporation created under the laws of the State of Connecticut. The defendant demurred to the petition, his demurrer was sustained, and, the plaintiff declining to plead further, its petition was dismissed. Both the appeals raise the same question and will be considered together.

By section 633, Kentucky Statutes, 1903, licenses to agents of foreign companies must be renewed annually, and any person acting as the agent of such a company without procuring a license, or after the license has expired, or has been suspended or revoked, shall be guilty of a misdemeanor and fined not less than $50 nor more than $100 for each offense. By section 634 every foreign insurance company, before transacting any business in this State, must return to the commissioner a copy of its charter or organic law, and the commissioner, upon being satisfied that the company has complied with the laws of the State and is possessed with the legal reserve shall furnish to such agents as the company di-

rects a license to transact business as agents for the company, under the seal of the Insurance Department. By section 657 foreign life insurance companies, in addition, must file statements annually of their condition on the 31st of December of the year preceding and certain evidences of their deposits, securities, etc. By section 694 insurance companies other than life, not incorporated under the laws of this State, upon complying with the provisions of the statute, may be authorized by the commissioner to transact business in the State. By section 761, the fees to be charged by the commissioner are regulated.

Section 631, Kentucky Statutes, 1903, is in these words: "Before authority is granted to any foreign insurance company to do business in this State, it must file with the commissioner a resolution adopted by its board of directors, consenting that service of process upon any agent of such company in this State, or upon the commissioner of insurance of this State, in any action brought or pending in this State, shall be a valid service upon said company; but if process is served upon the commissioner it shall be his duty to at once send it by mail, addressed to the company at its principal office; and if any company shall, without the consent of the other party to any suit or proceeding brought by or against it in any court of this State, remove said suit or proceeding to any federal court, or shall institute any suit or proceeding against any citizen of this State in any federal court, it shall be the duty of the commissioner to forthwith revoke all authority to such company and its agents to do business in this State, and to publish such revocation in some newspaper of general circulation published in the State."

The validity of the latter clause of the section is the only question to be determined upon the appeal. It is insisted

that it is in conflict with the Constitution of the United
States. Three decisions of the United States supreme court
are relied on. In Home Insurance Company v. Morse, 20
Wall., 445, 22 L. Ed., 365, the statute of the State required
the foreign insurance company to sign an agreement not to
remove any of its cases to the federal courts. The company
signed the agreement and afterward filed a petition seeking
the removal of a suit brought against it to the federal court.
The State court refused to remove the case, but on appeal
to the United States supreme court the judgment of the State
court was reversed, and it was held that the agreement in
advance not to exercise a right guaranteed by the Constitu-
tion did not prevent the defendant from removing the case
to the federal court. The opinion was written by Judge
Hunt, and goes no further than the question actually before
the court.

The next case relied on is Doyle v. Continental Insurance
Company, 94 U. S., 535, 24 L. Ed., 148; the opinion being
also written by Judge Hunt. In that case there was a State
statute corresponding to section 631 above quoted, and the
State officer under it was about to cancel the license of the
insurance company. The plaintiff made in substance the
same allegations as are made in the case before us, and pray-
ed an injunction as in these cases. The supreme court, re-
versing the court below, dismissed the bill. After distinguish-
ing the case from the Morse Case, the court said: "The
cases of Bank v. Earle 13, Pet., 519 [10 L. Ed., 274], Ducat
v. Chicago, 10 Wall., 410 [19 L. Ed., 972], Paul v. Virginia,
8 Wall., 168 [19 L. Ed., 357], and Insurance Company v.
French, 18 How., 404 [15 L. Ed., 451], establish the prin-
ciple that a State may impose upon a foreign corporation, as
a condition of coming into or doing business within its ter-

ritory, any terms, conditions, and restrictions it may think
proper that are not repugnant to the Constitution or laws
of the United States.  The point is elaborated at great length
by Chief Justice Taney in the case first named, and by Mr.
Justice Field (Curtis) in the case last named. The correlative
power to revoke or recall a permission is a necessary conse-
quence of the main power.  A mere license by a State is al-
ways revocable.  Rector v. Philadelphia, 24 How., 300 [16
L. Ed., 602] ; People v. Roper, 35 N. Y., 629; People v. Com-
missioners, 47 N. Y., 501.  The power to revoke can only be
restrained, if at all, by an explicit contract upon good con-
sideration to that effect.  Humphrey v. Pegues, 16 Wall.,
244 [21 L. Ed., 326] ; Tomlinson v. Jessup, 15 Wall. 454
[21 L. Ed., 204].  License to a foreign corporation to enter
a State does not involve a permanent right to remain, subject
to the laws and Constitution of the United States.    Full
power and control over its territories, its citizens, and its
business belongs to the State.  If the State has the power
to do an act, its intention or the reason by which it is in-
fluenced in doing it can not be inquired into.  Thus the plead-
ing before us alleges that the permission of the Continental
Insurance Company to transact its business in Wisconsin is
about to be revoked for the reason that it removed the case
of Drake from the State to the federal courts.  If the act
of an individual is within the terms of the law, whatever
may be the reason which governs him or whatever may be
the result, it can not be impeached.  The acts of a State are
subject to still less inquiry, either as to the act itself or as
to the reason for it.  The State of Wisconsin (except so far
as its connection with the Constitution and laws of the United
States alters its position) is a sovereign State, possessing
all the powers of the most absolute government in the world.

The argument that the revocation in question is made for an unconstitutional reason can not be sustained. The suggestion confounds an act with an emotion or a mental proceeding which is not the subject of inquiry in determining the validity of a statute. An unconstitutional reason or intention is an impracticable suggestion, which can not be applied to the affairs of life. If the act done by the State is legal—is not in violation of the Constitution or laws of the United States—it is quite out of the power of any court to inquire what was the intention of those who enacted the law. In all cases where the legislation of a State has been declared void, such legislation has been based upon an act or a fact which was itself illegal." After discussing certain previous decisions, the court added: "It is said that we thus indirectly sanction what we condemn when presented directly, to-wit, that we enable the State of Wisconsin to enforce an agreement to abstain from the federal courts. This is an 'inexact statement.' The effect of our decision in this respect is that the State may compel the foreign company to abstain from the federal courts or to cease to do business in the State. It gives the company the option. This is justifiable, because the complainant has no constitutional right to do business in that State. That State has authority at any time to declare that it shall not transact business there. This is the whole point of the case, and, without reference to the injustice, the prejudice, or the wrong that is alleged to exist, must determine the question. No right of the complainant under the laws or Constitution of the United States, by its exclusion from the State, is infringed; and this is what the State now accomplishes. There is nothing, therefore, that will justify the interference of this court."

It is conceded by counsel that if this case is still authority,

these actions must fail.   But it is insisted that in Barron
v. Burnside, 121 U. S., 186, 7 Sup. Ct., 931, 30 L. Ed., 915,
this case was, in effect, overruled.   In Barron v. Burnside
there was a State statute requiring every foreign corpora-
tion to have a license before engaging in business in the
State.   The license, by the terms of the statute, was not to
be issued except upon the application of the company by a
resolution of the board of directors or stockholders author-
izing it, and containing a stipulation that the permit should
be subject to each of the provisions of the act, one of which
was that the permit should be void if the corporation re-
moved a case to the federal courts.   Barron was arrested
under the statute for doing business for a foreign corpora-
tion without complying with the statute, and obtained a writ
of habeas corpus, which was sustained by the United States
supreme court.   The court, after quoting the statute and
discussing it at some length, said: "This proceeding is a
unit.   The filing of the articles of incorporation and the pro-
vision in regard to service of process are to be authorized
by the same resolution which requests the issue of the permit;
and this request or application is to contain the stipulation
above mentioned.   These various things are not separable."
Then, after some further discussion of the statute, the court
concludes with these words: "In view of these considera-
tions, the case falls directly within the decision of this court
in Home Insurance Company v. Morse [20 Wall., 445, 22 L.
Ed., 365]." It then proceeds, after showing what was de-
cided in the Morse Case, to discuss the Doyle Case in these
words: "The case of Doyle v. Continental Insurance Com-
pany, 94 U. S., 535, 24 L. Ed., 148, is relied on by the de-
fendant in error.   In that case this court said that it had
carefully reviewed its decision in Home Insurance Company

v. Morse, and was satisfied with it. In referring to the second conclusion in Insurance Company v. Morse, above recited, namely, that the statute of Wisconsin was repugnant to the Constitution of the United States, and was illegal and void, the court said, in Doyle v. Continental Insurance Company, that it referred to that portion of the statute which required a stipulation not to transfer causes to the courts of the United States. In that case, which arose under the statute of Wisconsin, the foreign insurance company had complied with the statute, and had filed an agreement not to remove suits into the federal courts, and had received a license to do business in the State. Afterwards it removed into the federal court a suit brought against it in a State court of Wisconsin. The State authorities threatening to revoke the license, the company filed a bill in the circuit court of the United States, praying for an injunction to restrain the revoking of the license. A temporary injunction was granted. The defendant demurred to the bill, the demurrer was overruled, a decree was entered making the injunction perpetual, and the defendant appealed to this court. This court reversed the decree and dismissed the bill. The point of the decision seems to have been that, as the State had granted the license, its officers would not be restrained by injunction by a court of the United States from withdrawing it. All that there is in the case beyond this, and all that is said in the opinion which appears to be in conflict with the adjudication in Insurance Company v. Morse, supra, must be regarded as not in judgment."

We do not understand this to overrule the Doyle case; for certainly, if the State can not withdraw the license it has once granted, any court of competent jurisdiction may so decide. If the State statute withdrawing the license was un-

constitutional and void, the supreme court of the United States had the same power to declare the statute in that case unconstitutional as it had to declare the statute unconstitutional in Barron v. Burnside. Our statute is not liable to the objections made to the statute in either the Morse case or the Barron case. Under our statute the foreign insurance company is at liberty to remove its cause to the federal court whenever it sees proper. It is required to sign no stipulation or agreement interfering with that right. The regulation is reasonable that the State, for the protection of its citizens against unsafe insurance companies, should require them, before doing business in the State, to obtain a license from the insurance commissioner, and to furnish him such evidences of their solvency as will protect insurers in this State before he is authorized to grant them a license. The license which the State grants is purely a matter of grace, and, like any other license, may be revoked by the licensor at pleasure. The revocation of the license interferes with no legal right of the licensee; for, when he takes it, he takes it subject to revocation. He can not question the reason of the licensor for revoking the license, as the State may exclude foreign corporations from doing business in the State with or without reason. If I have license to cross my neighbor's lot, and he revokes it because I brought a suit against his son, I can not enjoin him from revoking the license on the ground that I had a constitutional right to go to the courts for relief, and that my exercise of a constitutional right was no just reason for his revoking the license he had given me; for he had an absolute right to revoke the license, and the fact that he did it out of spite, or for a bad reason, is immaterial. The State, by her statutes above referred to, in effect, says to the foreign insurance companies: "I will

license you to do business here on the same plane as domestic corporations, and if you come here you must stand on no more favorable ground than the domestic insurance companies. If, after you come, you refuse to so stand, I will withdraw my license." The reason for the statute is not distrust of the federal courts, but the practical denial of justice that results, in a sparsely settled State like ours, if the case must be tried 100 or 200 miles from where the parties and witnesses reside. Domestic insurance companies enjoy no such immunity, but must try their cases in the vicinage. The State simply says to the foreign insurance companies: "I will withdraw my license if you insist on privileges not enjoyed by home companies." If the State, on the day before these suits were filed, by legislative act had withdrawn all licenses to foreign insurance companies, reciting in the preamble to the act that it was enacted inasmuch as the two cases above referred to had been removed to the United States circuit court, could these plaintiffs have complained? If not, how are they affected by the fact that the State acts by an executive officer, and not by a special statute? Certainly they can not complain that the license of certain other companies was not revoked.

The case of Commonwealth v. East Tennessee Coal Company, 97 Ky., 238, 17 R., 139, 30 S. W., 608, did not involve the revocation of a license granted by the State, but was in effect similar to Barron v. Burnside, above cited, being a proceeding to impose a fine on the defendant after it removed a case from the State courts. The naked question presented here is, may the State, without cause, revoke a license it has once granted, for a bad reason is no worse than none at all. The distinction is a narrow one, but none the less sound, unless the whole doctrine that the State may grant or with-

hold a license as it sees fit is to be abandoned. It is juggling with words to say that a State may at will prohibit foreign corporations from doing business in the State (Hooper v. California, 155 U. S., 650, 15 Sup. Ct., 207, 39 L. Ed., 297), and yet that it may not at will withdraw a license which it has once granted to such corporations. It seems to us that the Boyle Case rests on sound principles, and that the Barron Case in no wise conflicts with it; for that case is by the court expressly put upon the ground that the statute there, when properly construed, fell within the rule laid down in the Morse Case. 6 Thompson on Corporations, secs. 7466-7467; 13 Am. & Eng. Ency. of Law, p. 867; People v. Pavey, 151 Ill., 101, 37 N. E., 691.

The judgment in the first case is therefore reversed, for further proceedings consistent herewith.

The judgment in the second case is affirmed.

Chief Justice Burnam and Judge Barker dissent.

Dissenting opinion of Judge Barker:

Believing that the conclusion reached by the majority of the court in these cases can not be justified either by reason or upon authority, I feel it my duty to present my views in a dissenting opinion. I do this with great modesty and with great reluctance—the first, from solicitude lest I fail to do justice to the importance of the subject, and the second, from my disinclination to differ from the opinions of those whose attainments I hold in so high esteem.

The question presented by these records is whether a State may enact a valid law, which shall present to a foreign corporation the alternative either of surrendering its right, under the provisions of the Constitution and laws of the United States, to remove to the federal court an action in-

stituted against it by a citizen in the State court, or of not being permitted to do business in the State. The proper solution of this question is essential to the orderly adjustment of the conflicting spheres of our dual system of jurisprudence, national and State.

When our complex form of government was established, the national Constitution and the laws enacted in pursuance thereto, were made the supreme law of the land (Const. U. S., art. 6) ; and it must necessarily follow, as a logical and legal sequence, that whenever a State law comes in conflict with a national law the former must give way—it is void. The statutes of the United States, in pursuance of a settled national policy of affording to citizens of each State the means of escaping the dangers of local prejudice in favor of home litigants, prescribe the conditions and terms under which such actions may be removed to the federal courts. This is done in the interest of fair and impartial trials, or, in other words, in the interest of justice.

The laws of our Commonwealth bearing upon the question under investigation are divided into two branches, although the intent of each is the same; the divergence being merely in the particular manner of enforcing the same principle against different classes of corporations. Sections 572 and 573 of the Kentucky Statutes of 1903 apply to all foreign corporations doing business in the State, except insurance companies, and are as follows:

"Sec. 572. If any foreign corporation shall, without the consent of the adverse party, remove to the federal court any action pending against it in any court of this State, or institute an action against a citizen of this State in a federal court of this State, such action on the part of the corporation shall forfeit its right to transact or carry on any busi-

ness in this State; and such corporation, and any officer, agent or employe thereof, who shall thereafter transact or engage in any business or employment for such corporation in this State shall be severally guilty of a misdemeanor, and, upon indictment and conviction in the circuit court of any county in which such corporation, or any officer, agent or employe thereof transacts or engages in any business, be fined for each offense not less than five hundred nor more than one thousand dollars.

"Sec. 573. The provisions of all charters and articles of incorporation, whether granted by special act of the General Assembly or obtained under any general incorporation law, which are inconsistent with the provisions of this chapter concerning similar corporations, to the extent of such conflict, and all powers, privileges or immunities of any such corporation which could not be obtained under the provisions of this chapter, shall stand repealed on September 28, 1897; and if the officers, managers or agents of such corporation shall, after said date, exercise any powers, privileges or immunities repealed by this section or inconsistent with the provisions of this chapter, relating to similar corporations, or which could not be obtained under this chapter, the officer, manager or agent so offending, and the corporation for which he acts, shall each be guilty of a misdemeanor, and fined for each offense not less than one hundred nor more than one thousand dollars, and upon the conviction of the corporation, the trial jury may, at their discretion, direct the forfeiture of its charter or articles of incorporation, in which case the court shall so adjudge. After the twenty-eighth day of September, 1897, the provisions of this chapter shall apply to all corporations created or organized under the laws of

this State, if said provisions would be applicable to them if organized under this chapter."

The statute applicable to foreign insurance corporations is to be found in sections 631 and 633 of the Kentucky Statutes of 1903, and is as follows:

"Sec. 631.   Before authority is granted to any foreign insurance company to do business in this State, it must file with the commissioner a resolution adopted by its board of directors, consenting that service of process upon any agent of such company in this State, or upon the Commissioner of Insurance of this State, in any action brought or pending in this State, shall be a valid service upon said company; and if process is served upon the commissioner it shall be his duty to at once send it by mail, addressed to the company at its principal office; and if any company shall, without the consent of the other party to any suit or proceeding brought by or against it in any court of this State, remove said suit or proceeding to any federal court, or shall institute any suit or proceeding against any citizen of this State in any federal court, it shall be the duty of the commissioner to forthwith revoke all authority to such company and its agents to do business in this State, and to publish such revocation in some newspaper of general circulation published in the State."

"Sec. 633.   Licenses to agents of foreign companies must be renewed annually in the same manner as original licenses, upon a finding by the commissioner that the company represented by the agent has fully complied with the law, and maintains its required capital or reserve; and whoever solicits and receives application for insurance on behalf of any insurance company, or transmits for any person other

than himself an application for insurance, or a policy of insurance to or from such company, or advertises that he will receive or transmit the same, or who shall, in any manner, directly or indirectly, aid or assist in transacting the insurance business of any insurance company, shall be held to be an agent of such company within the meaning of this article, anything in the policy or application to the contrary notwithstanding; and any person acting as the agent of any company within the meaning of this section, without first procuring and having a license from the commissioner to act as such agent, or, after such license has expired, been suspended or revoked, or who shall procure any premium or obligation therefor by fraudulent representations, shall be deemed and held guilty of a misdemeanor, and, upon conviction for such offense, shall be fined not less than fifty nor more than one hundred dollars for each offense."

The question involved here was presented for adjudication in this State for the first time in Commonwealth v. East Tennessee Coal Co., 97 Ky., 238, 17 R., 139, 30 S. W., and Commonwealth v. Jellico Coal Co., 97 Ky., 246, 17 R., 109, 30 S. W., 611. These cases arose under section 572 of the Kentucky Statutes of 1903; the two corporations, as their names import, being coal companies. The opinions in both were delivered by the court through Judge Eastin, and contain a learned and thorough discussion of the question at bar. In both, section 572, which, as said before, applies to foreign corporations (except insurance) doing business in the State, was held to be void, because in contravention of the Constitution and laws of the United States. These cases are both practically overruled by the opinion of the majority, although this has not been done in express language; the court, as it seems to me, unsuccessfully seeking to distinguish them

from the cases at bar, and, in so doing, inadvertently, of
course, misstating the question involved in them. The fol-
lowing is the language of the opinion with reference to the
case containing the reasoning on the constitutional question:
"The case of Commonwealth v. East Tennessee Coal Co., 97
Ky., 238, 17 R., 139, 30 S. W., 608, did not involve the revo-
cation of a license granted by the State, but was in effect
similar to Barron v. Burnside [121 U. S., 186, 7 Sup. Ct.,
931, 30 L. Ed., 915], above cited; being a proceeding to im-
pose a fine on the defendant after it removed a case from the
State court." Judge Eastin commences his opinion with the
following language: "This appeal involves the constitu-
tionality of section 572 of the Kentucky Statutes of 1903,
which is in these words, to-wit: . . ." Then, after citing
section 572, he said: "Under this provision of the statutes, this
action was brought by appellant in the Whitley circuit court
for the purpose of having it judicially declared that appellee
had forfeited its right to carry on business in Kentucky, and
of enjoining it from doing so. In the petition it is alleged
that appellee is a foreign corporation, created by the laws of
the State of Tennessee, but engaged for several years past
in carrying on business in Whitley county, in this State, and
that on May 14, 1894, it had, by proper proceedings, pro-
cured the removal from the Whitley circuit court of an ac-
tion therein pending against it to the federal court sitting
at Frankfort, Ky., on the alleged ground that said suit in-
volved a controversy between citizens of different States,
and that this was done without the consent of the adverse
party to said action. It is further alleged that by this action
appellee has forfeited its right to carry on business in this
State, but that, notwithstanding this fact, it is still engaged
in carrying on its business in Whitley county, Kentucky;

340        KENTUCKY REPORTS.        [Vol. 119

Prewitt, Ins. Com'r, v. Security Mutual Life Ins. Co.
Travelers Ins. Co. v. Prewitt, Ins. Com'r.

and the court below is asked to decree the existence of the alleged forfeiture, and to enjoin appellee from further continuing its said business in Kentucky." So that the court are mistaken in supposing that the case explained simply involved the imposition of a fine. It was nothing more or less than a proceeding to revoke the license or right to do business in Kentucky of a foreign corporation for the sole reason that it had exercised its privilege of removing an action instituted against it by a citizen of this State to the federal court. In principle, the questions involved there and here are identical. With this question before it, the court there held that section 572 was unconstitutional after a review of all the federal decisions on the subject. The opinion concludes in these words: "From this review of the decisions of the supreme court of the United States, it would seem that there is no longer any question as to the invalidity of legislation such as this act we are now considering. Those decisions establish the doctrine that this right of removal is a constitutional privilege conferred by the Constitution and laws of the United States upon every citizen of a State, foreign to the State in which the suit is brought, which would clearly embrace all foreign corporations; and any legislation on part of the State by which it is proposed or designed to take away that privilege, even under the power of the State to fix the terms upon which the corporation may enter that State for the purpose of doing business, is unconstitutional and void. In accordance with these views, we adjudge that section 572 of the Kentucky Statutes of 1903, is unconstitutional, and that the demurrer of appellee to the petition filed against it by appellant was properly sustained." The case of Commonwealth v. Jellico Coal Company did involve the right to fine a foreign corporation for removing an

action instituted against it by a citizen of the State to the federal court, and the right to impose this fine was denied upon a simple question of procedure under the statute. However, the court did not rest here, but, after deciding the case adversely to the Commonwealth on the first ground, said: ". . . But in addition to this, and for the reasons fully set forth in the opinion this day delivered in the case of Commonwealth v. East Tennessee Coal Co., 97 Ky., 246, 17 R., 139, 30 S. W., 611, with which this appeal was heard, it is the opinion of this court that the section of the statute above referred to is in conflict with the Constitution and laws of the United States, and therefore void." So that it is plain that this court, as then constituted, were of opinion that section 572 was unconstitutional, and, under its provisions, neither a fine could be imposed for a violation of its terms, nor the right to do business by a foreign corporation prevented in a direct proceeding had for that purpose.

These cases, and especially the first one, so far as the principle involved is concerned, are identical with that in the cases at bar. Of course, I recognize the inutility of pointing out a conflict between older and later opinions of the same court on the same question. The last is always the law. But I deeply regret than an opinion showing such painstaking labor and learning as does that in Commonwealth v. East Tennessee Coal Company should receive no better fate at the hands of the court, as at present constituted, than to be silently ignored, or, worse still, should only have been thought worthy of a casual line, which wholly misstates the question involved. But there are cases which can not be so lightly thrust aside, being the utterances of the supreme court of the United States, which is the final expositor of all ques-

tions arising under the Constitution and the laws of the
United States.

The question in hand, so far as I am advised, was adjudi-
cated by the supreme court of the United States for the first
time in Insurance Co. v. Morse, 87 U. S. (20 Wall.) 445, 22
L. Ed., 365. This case went up from the State of Wisconsin
under a statute, the pertinent part of which is as follows:
"It shall not be lawful for any fire insurance company, as-
sociation, or partnership, incorporated by or organized under
the laws of any other State of the United States, or any
foreign government, for any of the purposes specified in this
act, directly or indirectly to take risks or transact any busi-
ness of insurance in this State, unless possessed of the
amount of actual capital required of similar companies form-
ed under the provisions of this act; and any such company
desiring to transact any such business as aforesaid by any
agent or agents, in this State, shall first appoint an at-
torney in this State on whom process of law can be served,
containing an agreement that such company will not remove
the suit for trial into the United States circuit court or
federal courts, and file in the office of the Secretary of State
a written instrument, duly signed and sealed, certifying such
appointment, which shall continue until another attorney be
substituted." The question arose in this way: The Home
Insurance Company of New York, having been sued in Wis-
consin by a citizen of that State, undertook to remove the
action, under the federal statute, to the federal court. This
was resisted because the company had agreed in compliance
with the statute above quoted, not to remove such actions
to the federal courts; and this fact being established, the
State court refused to permit the removal, and entered judg-
ment on final hearing against the company. The supreme

court of the United States, on writ of error, reversed the supreme court of Wisconsin, and returned the case, with directions to grant the removal in accordance with the prayer of the petition. This was done on two grounds: First, that the agreement was void at common law; and, second, it was void because it was in contravention of the national Constitution, and statutes passed pursuant thereto, permitting the removal in question. The court said (page 458, 87 U. S., 22 L. Ed., 365): "We are not able to discover in this case any countenance for the statute of Wisconsin which we are considering. On this branch of the case the conclusion is this: (1) The Constitution of the United States secures to citizens of another State than that in which suit is brought an absolute right to remove their cases into the federal court upon compliance with the terms of the act of 1789. (2) The statute of Wisconsin is an obstruction to this right, and is repugnant to the Constitution of the United States, and the laws in pursuance thereof, and is illegal and void. (3) The agreement of the insurance company derived no support from an unconstitutional statute, and is void, as it would be, had no such statute been passed."

The case of Doyle v. Continental Insurance Company, 94 U. S., 535, 24 L. Ed., 148, afterward went up from the supreme court of Wisconsin to the supreme court of the United States on a different phase of the same statute. In that case the insurance company removed the cause, and the State authorities undertook to revoke the license to do business in the Station for this violation of the statute. The company instituted a suit in equity for an injunction restraining the Secretary of State from this alleged wrongful act. A temporary restraining order was entered, and, upon final hearing, was made perpetual. On appeal the supreme court held that

the foreign insurance company was without remedy under the circumstances, and that the State could revoke the license, even under an unconstitutional law. There can be no doubt that the opinion in this case fully sustains that of the majority in the case at bar, and, if it still expresses the law, my brethren are correct in the conclusion they have reached in the cases under consideration. But afterward the case of Barron v. Burnside, 121 U. S., 186, 7 Sup. Ct., 931, 30 L. Ed., 915, came on for adjudication, and involved a still different phase of a similar statute. This case arose in Iowa under a statute not differing in principle from any of the statutes hereinbefore stated or discussed. Laws 21st Gen. Assem., 1886, p. 97, c. 76. The law denounced a fine against any foreign corporation doing business in Iowa without a permit or license, sections 3 and 4 being as follows:

"Sec. 3. Any foreign corporation sued or impleaded in any of the courts of this State upon any contract made or executed in this State or to be performed in this State or for any act or omission, public or private, arising, originating, or happening in the State, who shall remove any such cause from such State court into any of the federal courts held or sitting in this State, for the cause that such corporation is a non-resident of this State or a resident of another State than that of the adverse party, or of local prejudice against such corporation, shall thereupon forfeit and render null and void any permit issued or authority granted to such corporation to transact business in this State; such forfeiture to be determined from the record of removal, and to date from the date of filing of the application on which such removal is affected, and whenever any corporation shall thus forfeit its said permit no new permit shall be issued to it for the space

of three months, unless the executive council shall for satisfactory reason cause it to be issued sooner.

"Sec. 4. Any foreign corporation that shall carry on its business and transact the same on and after September 1, 1886, in the State of Iowa by its officers, agent, or otherwise, without having complied with this statute, and taken out, and having a valid permit shall forfeit and pay to the State for each and every day in which such business is transacted and carried on the sum of one hundred dollars ($100), to be recovered by suit in any court having jurisdiction. And any agent, officer or employe who shall knowingly act or transact such business for such corporation when it has no valid permit as provided herein shall be guilty of a misdemeanor and for each offense shall be fined, not to exceed one hundred dollars ($100), or imprisoned in the county jail, not to exceed thirty days, and pay all costs of prosecution."

The Chicago & Northwestern Railroad Company was an Illinois corporation doing business in Iowa without the permit or license required by the statute. One of its engineers was arrested and fined for carrying on the business of the corporation when it had no permit to do business in the State. When this case came to the supreme court, both of its former adjudications on this subject were reviewed, and the conclusion reached that the whole statute was void, because of the unconstitutionality of that part which undertook to prohibit foreign corporations from removing causes against them to the federal court. On the subject of Doyle v. Continental Insurance Company, after thoroughly discussing it, the court said (page 199, 121 U. S., page 936, 7 Sup. Ct., 30 L. Ed., 915) : "The point of the decision seems to have been that, as the State had granted the license, its officers would not be restrained by injunction, by a court of

the United States, from withdrawing it. All that there is in the case beyond this, and all that is said in the opinion which appears to be in conflict with the adjudication in Insurance Co. v. Morse, must be regarded as not in judgment." I differ from the majority in construing this language of the opinion. It seems to me that it was meant to overrule the opinion then under review. Any other conclusion would make it meaningless. There is no doubt but that the Iowa· statute applied to the foreign insurance company involved in the litigation. Mr. Justice Blatchford opens his opinion with the following sentence: "The statute manifestly applies to the Northwestern Railway Company as an Illinois corporation." So that, if the statute was valid, the proceeding against the offending engineer was also valid, as there was no question in the opinion as to the commission of the acts which contravened the statute. The court concludes its review of the two cases in the following language: "In both of the cases referred to, the foreign corporation had made the agreement not to remove into the federal court suits to be brought against it in the State court. In the present case no such agreement has been made, but the locomotive engineer is arrested for acting as such in the employment of the corporation, because it has refused to stipulate that it will not remove into the federal court suits brought against it in the State courts, as a condition of obtaining a permit, and consequently has not obtained such permit. Its right, equally with any individual citizen, to remove into the federal court, under the laws of the United States, such suits as are mentioned in the third section of the Iowa statute, is too firmly established by the decisions of this court to be questioned at this day, and the State of Iowa might as well pass a statute to deprive an individual citizen of

another State of his right to remove such suits. As the Iowa statute made the right to a permit dependent upon the surrender by the foreign corporation of a privilege secured to it by the Constitution and laws of the United States, the statute requiring the permit must be held to be void."

The inherent infirmity of the majority opinion lies in the effect it gives to an unconstitutional statute. The supreme court, in the case of Norton v. Shelby County, 118 U. S., 442, 6 Sup. Ct., 1125, 30 L. Ed., 178, on this subject says: "An unconstitutional act is not a law. It confers no right. It imposes no duty. It affords no protection. It creates no office. It is, in legal contemplation, as inoperative as though it had never been passed." In Cooley's Constitutional Limitations (page 188) it is said: "When a statute is adjudged to be unconstitutional, it is as if it has never been. Rights can not be built up under it. Contracts which depend upon it for their consideration are void. It constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made." If this be the law, then so much of the statute under consideration as is admitted to be unconstitutional is as if it had never been enacted by the Legislalature. Where, then, is the warrant of the Insurance Commissioner for the revocation of the licenses in these cases? It is no answer to say that if a State may refuse to permit a foreign corporation to do business in the State, or to arbitrarily revoke its license so to do (or, in other words, revoke it for no reason), therefore it may do this for an invalid reason, or under the authority of an unconstitutional statute. A State can only speak through its laws, and, if the law is invalid, then the State has not spoken at all. The Commonwealth has not undertaken to prevent foreign corporations

from doing business in the State, or to revoke their license so to do "for no reason" or arbitrarily. It has said to its Insurance Commissioner that he must grant foreign insurance companies license to transact business in this State when they comply with certain requirements, and that he must revoke this license if they remove to the federal court a suit against them by a citizen of the State. Now, this latter part of the statute is conceded to be void, being in contravention of the laws of the United States. Therefore, in reading the statute, it must be· omitted, and when this is done we find no warrant for the action of the commissioner. To illustrate this, take a pen and erase from the face of the statute those parts which are admitted to be invalid, and then it will present its legal attitude toward foreign corporations, and nothing will be left which authorizes the revocation of the license. Of course, this view is predicated upon the theory that the statute is separable, and that the valid part may be segregated from the invalid. If this can not be done, then the whole statute is void, and there is no law whatever on the subject, and, as a consequence, still less authority (if that were possible) for the revocation.

No practical difference can be pointed out between the statutes of Wisconsin, Iowa, or Kentucky on the subject under discussion. They were all enacted for the same purpose, and even the verbiage is remarkable in its similarity. In the cases at bar the corporations bear the same attitude toward the laws of the State of Kentucky as did the corporation toward the laws of the State of Iowa, and the analogy is complete when the license is revoked by the Commissioner, for a corporation whose license is revoked is in precisely the same relation toward the law as one which never had a license. If this be so (and it seems axiomatic), of what avail

·is the conclusion of the majority, if it results that the revocation of the license is a mere *brutum fulmen*, and that the State is unable to invoke the vindicatory part of the statute because of its invalidity? Is so fine a distinction worth the drawing? It seems to me this must be answered in the negative. And yet this is the precise result of the revocation of the Insurance Commissioner in these cases, if the opinion in Barron v. Burnside expresses the law.

The opinion of the majority, as said heretofore, is not only contrary to authority, but also to reason. The policy of the national law under discussion is to place, as far as possible, a citizen of one State engaged in litigation with a citizen of another State on a plane of equality before the law; in other words, to make it possible that the stranger may defend his property or rights free from the bias of local prejudice or passion. No disinterested mind will deny that this is a just policy. The question, then, is whether this beneficent policy in the interest of a fair and impartial trial to the foreign citizen may be nullified by a statute enacted for the selfish purpose of giving the citizen the advantage of a trial close to his home (to put the most favorable construction on it), without any regard to the still greater distance of the stranger from his home, and his inconvenience on that score, or of the danger of his suffering from local prejudice or passion in a suit with the citizen. The State statute considers only the convenience of the citizen as measured by the additional distance to the place of trial after removal of the case to the federal court, and ignores the danger to the foreigner of a miscarriage of justice on the merits of the controversy, arising from local prejudice or passion in the State tribunal. The existence of such a statute, in itself,

affords a justification of the national policy, as expressed in the removal statutes, if such justification were needed.

It may not be altogether impertinent to the subject in hand to say, in conclusion, that it would be well to remember that it is a narrow and provincial view to regard these national laws as harsh and severe edicts imposed by a foreign suzerain, instead of benignant laws imposed by ourselves in the interest of a broad and national justice, and that, in their practical operation, many more of our own citizens are benefited by them in their litigation in other States than are inconvenienced by them in favor of citizens of foreign States litigating in our Commonwealth.

For the foregoing reasons, I dissent from the opinion of the majority of the court in these cases.