SECURITY MUTUAL LIFE INSURANCE COMPANY *v.* PREWITT, INSURANCE COMMISSIONER OF THE STATE OF KENTUCKY.

TRAVELERS INSURANCE COMPANY OF HARTFORD *v.* SAME.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

Nos. 178, 184. Argued January 16, 1906.—Dismissed February 19, 1906.—Petitions for rehearing granted and cases decided May 14, 1906.

A writ of error having been dismissed, after full argument, as being a moot case, on mistaken assumption of fact justified by the record, and the petitions for rehearing showing facts on which substantial relief can be granted the application for rehearing is allowed and the case decided on the merits on the arguments already made.

A State has the power to prevent a foreign corporation from doing business at all within its borders unless such prohibition is so conditioned as to violate the Federal Constitution, and a state statute which, without requiring a foreign insurance company to enter into any agreement not to remove into the Federal courts cases commenced against it in the state court, provides that if the company does so remove such a case its license to do business within the State shall thereupon be revoked is not unconstitutional. *Doyle.* v. *Continental Insurance Co.*, 94 U. S. 535, followed and held not to be overruled by *Barron* v. *Burnside*, 121 U. S. 186, or any other decision of this court.

THE facts are stated in the opinion.

*Mr. Wm. Marshall Bullitt,* with whom *Mr. F. W. Jenkins, Mr. Julien T. Davies* and *Mr. Charles S. Grubbs* were on the brief, for the Security Mutual Life Insurance Co.

*Mr. Edmund F. Trabue* and *Mr. John G. Johnson,* with whom *Mr. Wm. Bro. Smith, Mr. John C. Doolan* and *Mr. Attilla Cox, Jr.,* were on the brief, for the Travelers Insurance Co.

*Mr. J. H. Hazelrigg,* with whom *Mr. N. B. Hays,* Attorney General of the Commonwealth of Kentucky, and *Mr. H. R. Prewitt* were on the brief, for defendant in error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

Motions for rehearing have been presented by plaintiffs in error. The cases were commenced in the proper state court in Kentucky, and were argued here on their merits in January of this term, and the writs of error were dismissed, 200 U. S. 446, because, as appeared from the record, only abstract questions remained to be decided, the licenses to do business within the State of Kentucky in both cases, which had been granted on July 1, 1904, for one year, having expired since issuing the writs of error.

In No. 178 the petition stated that the permission or authority to continue to do business in Kentucky had been renewed and extended from year to year by the State Insurance Commissioner, and that he had, on July 1, 1904, "continued the authority to the Security Mutual to transact the business of life insurance," as evidenced by the permit "for a period of one year from July 1, 1904." It was also averred that the permit had been revoked in September, 1904, and the company asked to have the revocation cancelled.

In No. 184 the petition stated that the company had been granted authority to transact business in the State of Kentucky for the period of one year then next ensuing, that is, from July 1, 1904. The petition showed that the permit had not then (October, 1904) been revoked, but it was alleged that the Superintendent of Insurance threatened to revoke it (on grounds substantially similar to those set forth in the *Security* case, in 200 U. S. *supra,* viz., the removal to a Federal court of a case commenced against the company in the state court), and an injunction was asked to prevent the revocation of the permit on that account.

On these motions for a rehearing it is now shown, what did

not appear in the records, that the permits in fact had been renewed for another year, from July 1, 1905, to July 1, 1906, for the purpose, as it would seem, of having the point involved reviewed by this court. Neither party. adverted to this fact on the argument, and the cases were fully presented by counsel on both sides, on the merits, and the question treated as still existing.

As the dismissal was ordered on a mistaken assumption of fact, justified by the records, that the permits had expired by lapse of time and had not been renewed, the applications for rehearing are granted and the judgments of dismissal set aside, and the cases will be decided upon the arguments already made in full by counsel for both parties.

The facts upon the main question sufficiently appear in the report in 200 U. S. 446. The Court of Appeals of Kentucky held the statute valid. 26 Ky. Law Rep. 1239, dissenting opinion, 27 Ky. Law Rep. 77. See also 83 S. W. Rep. 611; 84 S. W. Rep. 527.

The matter to be now determined is whether a State has the right to provide that if a foreign insurance company shall remove a case to the Federal court, which has been commenced in a state court, the license of such company to do business within the State shall be thereupon revoked.

The statute under which the question arises is known as section 631 of the Kentucky Statutes, and reads as follows:

"Before authority is granted. to any foreign insurance company to do business in the State, it must file with the Commissioner a resolution adopted by its board of directors, consenting that service of process upon any agent of such company in this State, or upon the Commissioner of Insurance of this State, in any action brought or pending in this State, shall be a valid service upon said company; and if process is served upon the Commissioner it shall be his duty to at once send it by mail, addressed to the company at its principal office; and if any company shall, without the consent of the other party to any suit or proceeding brought by or against it in any court

of this State, remove said suit or proceeding to any Federal court, or shall institute any suit or proceeding against any citizen of this State in any Federal court, it shall be the duty of the Commissioner to forthwith revoke all authority to such company and its agents to do business in this State, and to publish such revocation in some newspaper of general circulation published in the State."

A State has the right to prohibit a foreign corporation from doing business within its borders, unless such prohibition is so conditioned as to violate some provision of the Federal Constitution. Among the later authorities on that proposition are. *Hooper* v. *California*, 155 U. S. 648; *Allgeyer* v. *Louisiana*, 165 U. S. 578, 583; *Orient Insurance Company* v. *Daggs*, 172 U. S. 557; *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28; *New York Life Insurance Company* v. *Cravens*, 178 U. S. 389, 395; *Hancock Mutual Life Insurance Company* v. *Warren*, 181 U. S. 73.

Having the power to prevent a foreign insurance company from doing business at all within the State, we think the State can enact a statute such as is above set forth.

The question is, in our opinion, settled by the decisions of this court. In *Insurance Company* v. *Morse*, 20 Wall. 445, a statute of Wisconsin, passed in 1870, in relation to fire insurance companies, after providing for certain conditions upon which the foreign company might do business within the State, continued:

"Any such company desiring to transact any such business as aforesaid by any agent or agents in this State, shall first appoint an attorney in this State on whom process of law can be served, containing an agreement that such company will not remove the suit for trial into the United States Circuit Court or Federal courts, and file in the office of the Secretary of State a written instrument, duly signed and sealed, certifying such appointment, which shall continue until another attorney be substituted."

While that statute was in force the Home Insurance Company of the State of New York established an agency in Wis-

consin, and, in compliance with the provisions of the statute, the company duly filed in the office of the Secretary of State of Wisconsin the appointment of one Durand as its agent, upon whom process might be served. The power of attorney was filed, containing the following agreement: "Said company agrees that suits commenced in the state courts of Wisconsin shall not be removed by the acts of said company into the United States Circuit or Federal courts."

After doing business in the State for some time the company issued a policy to Morse, and a loss having occurred, Morse sued the company in one of the state courts of Wisconsin to recover the amount alleged to be due on the policy. The company entered its appearance in the suit and filed its petition to remove the case, which petition was in proper form, and was accompanied by the required bond and bail. Being presented to the state court of Wisconsin, in which the suit was brought, that court held that the statute justified the denial of the petition to remove the case into the Federal court, and a trial having been had in the state court, it gave judgment for the plaintiff on a verdict found in his favor. Upon a review of the judgment by the Supreme Court of Wisconsin it was affirmed. Thereupon the insurance company sued out a writ of error from this court, and the sole question was, whether the statute and agreement were sufficient to justify the state court in refusing to permit the removal of the case to the Federal court, and proceeding to judgment therein. This court held that the agreement was void, inasmuch as, if carried out, it would oust the Federal courts of a jurisdiction given them by the Constitution and statutes of the United States. It was said that the statute of Wisconsin was an obstruction to the right of removal provided for by the Constitution of the United States and the laws made in pursuance thereof, and that the agreement of the insurance company derived no support from the unconstitutional statute, and it was void as it would have been had no such statute been passed. The Chief Justice, with whom concurred Mr. Justice Davis, dissented, holding that, as

the State had the right to exclude foreign insurance companies from the transaction of business within its jurisdiction, it had the right to impose conditions upon their admission, which was a necessary consequence from the right to exclude altogether.

It will be seen the statute provided that in the power of attorney, appointing an agent for the company within the State, there should be an agreement that the company would not remove a case to a Federal court, and the statute was held to be void.

Subsequently the case of *Doyle* v. *Continental Insurance Company*, 94 U. S. 535, involving the same statute, came before this court. In that case the court reaffirmed the decision of the *Morse* case, *supra*, as to the invalidity of the agreement. But in distinguishing the two cases it was said in the course of the opinion that, as the State had the right to entirely exclude such company from doing business in the State, the means by which it caused such exclusion or the motives of its action were not the subject of judicial inquiry; that the conclusion reached in the *Morse* case that the statute of Wisconsin was illegal was to be understood as spoken of the provision of the statute then under review, viz., that portion thereof requiring a stipulation against transferring cases to the courts of the United States; that the decision was upon that portion of the statute only, and that other portions thereof, when presented, must be judged on their merits. The court further said that the *Morse* case had not undertaken to decide what the powers of the State of Wisconsin were in revoking a license previously granted, as no such question had arisen upon the facts therein, and was neither argued by counsel nor referred to in the opinion, but that in the case then before the court (that of Doyle) the point as to the power of the State to revoke a license was distinctly presented. It is stated in the opinion, as follows:

"We have not decided that the State of Wisconsin had not the power to impose terms and conditions as preliminary to the right of an insurance company to appoint agents, keep

offices, and issue policies in that State. On the contrary, the case of *Paul* v. *Virginia*, 8 Wall. 168, where it is held that such conditions may be imposed, was cited with approval in *Insurance Company* v. *Morse.*"

The opinion concludes as follows:

"It is said that we thus indirectly sanction what we condemn when presented directly; to wit, that we enable the State of Wisconsin to enforce an agreement to abstain from Federal courts. This is an 'inexact statement.' The effect of our decision in this respect is that the State may compel the foreign company to abstain from the Federal courts, or to cease to do business in the State. It gives the company the option. This is justifiable, because the complainant has no constitutional right to do business in that State; that State has authority at any time to declare that it shall not transact business there. This is the whole point of the case, and, without reference to the injustice, the prejudice, or the wrong that is alleged to exist, must determine the question. No right of the complainant under the laws or Constitution of the United States, by its exclusion from the State, is infringed; and this is what the State now accomplishes. There is nothing, therefore, that will justify the interference of this court."

In these two cases this court decided that any agreement made by a foreign insurance company not to remove a cause to the Federal court was void, whether made pursuant to a statute of the State providing for such agreement, or in the absence of such statute; but that the State, having power to exclude altogether a foreign insurance company from doing business within the State, had power to enact a statute which, in addition to providing for the agreement mentioned, also provided that if the company did remove a case from the state to a Federal court, its right to do business within the State should cease, and its permit should be revoked. It was held there was a distinction between the two propositions, and one might be held void and the other not.

The case of *Barron* v. *Burnside*, 121 U. S. 186, has been cited

as overruling the *Doyle* case, and as holding that a statute of the nature of the one in question here is void as a violation of the Federal Constitution. In that case a statute of Iowa was under consideration. It is set out in the report. The first section provides for an application by the foreign company to the Secretary of State, requesting that a permit may be issued to the corporation to transact business in the State. It also provides that the application shall contain a stipulation that the permit shall be subject to each of the provisions of the act. The third section provides that if any cases commenced in a state court were removed by the corporation into a Federal court, the corporation should thereupon forfeit any permit issued or authority granted to it to transact business in the State. The fourth section provides for punishing the agents, officers or servants of the corporation for doing business as such in the State, if the corporation had not complied with the statute and taken out and retained a valid permit to do business within the State. The corporation had not, in fact, taken out a permit. Barron, the plaintiff in error, was a servant of the corporation, and was engaged as engineer in running a train of the corporation, which started from Chicago and was running in the State of Iowa. He was arrested in Iowa for acting as the agent of the company in that State, while the company had no permit. Having been arrested, he applied to the Supreme Court of the State for a writ of *habeas corpus*, which was issued and a return made, and the case heard upon an agreed statement, containing the above facts. The state court upheld the validity of the statute, and the case was brought to this court by writ of error, where the judgment was reversed and the statute held invalid.

In the opinion delivered in this court it will be observed that the agreement or stipulation provided for in the statute was the material fact upon which the court proceeded, and it was held that the statute did require such agreement. The various requirements mentioned in the first section of the statute were referred to as forming in fact but one proceeding and as indis-

solubly bound up with the application for a permit that could
not be issued, unless the stipulation was given which made the
permit specially subject to each of the provisions of the act,
including the provision not to remove. It is clear from the
whole case that the stipulation not to remove was regarded as
the material part, and the case was decided on that foundation.
Mr. Justice Blatchford said:

"The statute is not separable into parts. An affirmative
provision requiring the filing by a foreign corporation, with
the Secretary of State, of a copy of its articles of incorporation,
and of an authority for the service of process upon a designated
officer or agent in the State, might not be an unreasonable or
objectionable requirement, if standing alone; but the manner
in which, in this statute, the provisions on those subjects are
coupled with the application for the permit, and with the stip-
ulation referred to, shows that the real and only object of the
statute, and its substantial provision, is the requirement of
the stipulation not to remove the suit into the Federal court."

For this reason the statute was held void.

Reference is then made in the opinion to the *Morse* case, 20
Wall. *supra*, wherein it was stated that agreements in advance
to oust the court of a jurisdiction conferred by law were illegal
and void, and that parties could not bind themselves in ad-
vance by such an agreement thus to forfeit their rights at all
times and on all occasions, whenever the case might be pre-
sented.

The *Doyle* case, 94 U. S. *supra*, was also referred to, and Mr.
Justice Blatchford said in regard to it as follows:

"The point of the decision seems to have been, that, as the
State had granted the license, its officers would not be re-
strained by injunction, by a court of the United States, from
withdrawing it. All that there is in the case beyond this, and
all that is said in the opinion which appears to be in conflict
with the adjudication in *Insurance Co.* v. *Morse*, must be re-
garded as not in judgment."

This is the language which it is contended overrules the *Doyle*

case. We do not think so. A reference to the *Doyle* case will show that the first part of the above-quoted statement is inaccurate, as the case does not seem to have been decided upon the proposition that an injunction was improper from a court of the United States to state officers. The *Morse* case was referred to and approved, and the court held there was nothing inconsistent between the two cases. The *Doyle* opinion proceeds upon that theory.

If it had been the intention of the court in *Barron* v. *Burnside* to overrule the *Doyle* case, it was easy to have said so. Instead of that, the opinion rests upon the ground of the agreement to be exacted as a condition of granting the permit, and that the statute was not separable into parts, and it was held that the requirement of such a stipulation was void. It was not held that such a statute as the one of Kentucky now under consideration was void. Such statute exacts no agreement or stipulation in any form or in any part of the statute.

In *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, 207, the same principle was stated, although the question was not directly involved, as the case was brought in the Federal court and the corporation contended it was not served with process in the proper district and that the court was on that account without jurisdiction. The court, per Mr. Justice Gray, in the course of the opinion, remarked that a statute requiring the corporation *as a condition precedent* to obtaining a permit to do business within the State, to surrender a right and privilege secured by the Federal Constitution and laws, was unconstitutional and void. (Page 207.) It was the same, in substance, as the Iowa statute, which was held void on account of the exaction of the agreement.

In *Barrow Steamship Co.* v. *Kane*, 170 U. S. 100, Justice Gray, in delivering the opinion of the court, again stated what was regarded as the holding in the two cases of *Insurance Co.* v. *Morse* and *Barron* v. *Burnside*, and said that "statutes requiring foreign corporations, as a condition of being permitted to do business within the State, to stipulate not to remove into

the courts of the United States suits brought against them in the courts of the State, have been adjudged to be unconstitutional and void." It was the exaction of a stipulation or agreement that rendered the statute illegal.

It is also said in *Blake* v. *McClung,* 172 U. S. 239, 255, that a statute providing that a stipulation should be made that the company would not remove a case into a Federal court was void because it made the right to do business under the license or permit depend upon the surrender by the corporation of a privilege secured to it by the Constitution.

It is urged that the Iowa and Texas statutes do not require an agreement not to remove. But those statutes do require such agreement. The Iowa statute provided that the application for a permit should contain a stipulation that the permit should be subject to each of the provisions of the act, among which was one that the corporation should forfeit the permit if it should remove the case. This was held to be, in effect, a stipulation not to remove, exacted as a condition for granting the permit. And so the court said:

"As the Iowa statute makes the right to a permit dependent upon the surrender by the foreign corporation of a privilege secured to it by the Constitution and laws of the United States, the statute requiring the permit must be held to be void." *Barron* v. *Burnside, supra,* page 200.

In other words, the statute was regarded as exacting an agreement in advance not to remove a case, and such being the fact it was held that the statute was void. The Texas statute is to the same effect as that of Iowa.

The most that can be contended for is that the *Barron* case holds that where the statute exacts a stipulation in advance, as a condition of granting a permit, and the statute is not separable into parts, the whole statute is void, and a provision for withdrawing the permit, if a case is removed, is not saved. That principle, as we have said, does not touch this case, as there is no exaction of a stipulation at any time.

It has not been decided that a statute which has no require-

ment for a stipulation or agreement not to remove is void, if there be simply a provision therein for a revocation of the permit, such as is contained in the statute under review.

As a State has power to refuse permission to a foreign insurance company to do business at all within its confines, and as it has power to withdraw that permission when once given, without stating any reason for its action, the fact that it may give what some may think a poor reason or none for a valid act is immaterial.

Counsel for the companies, in their brief admit that the State "has the right at any time to pass a statute expelling a company or revoking its license, and the validity of the statute of expulsion would not be affected by the motives of the State in so doing—even though the preamble expressly recited that the license was revoked because the company had removed a case. The statute would be valid—for the company had no constitutional right to remain in the State any longer than it chose to allow; and the statute would not abridge any right of removal—for as the case had already been fully removed before the statute was in existence, the right of removal could not be said to have been hindered or abridged by a statute not even in existence."

Thus it is admitted that a State has power to prevent a company from coming into its domain, and that it has power to take away its right to remain after having been permitted once to enter, and that right may be exercised from good or bad motives; but what the companies deny is the right of a State to enact in advance that if a company remove a case to a Federal court its license shall be revoked.

We think this distinction is not well founded. The truth is that the effect of the statute is simply to place foreign insurance companies upon a par with the domestic ones doing business in Kentucky. No stipulation or agreement being required as a condition for coming into the State and obtaining a permit to do business therein, the mere enactment of a statute which, in substance, says if you choose to exercise your right to re-

move a case into a Federal court, your right to further do business within the State shall cease and your permit shall be withdrawn, is not open to any constitutional objection. The reasoning in the *Doyle* case we think is good.

The orders heretofore entered dismissing the writs of error in these cases are set aside, and the judgments of the Court of Appeals of Kentucky are

*Affirmed.*

MR. JUSTICE DAY, with whom concurs MR. JUSTICE HARLAN, dissenting.

In view of the importance and far-reaching effect of the decision just announced, and being unable to concur therein, we have deemed it not improper to briefly state the grounds upon which our objection to the decision of the court rests.

Certain principles of constitutional law are firmly settled by the decisions of this court and need no citation of cases in their support. The Constitution of the United States and the laws passed in pursuance thereof are the supreme law of the land, and of controlling authority over all the people, and in all the States of the Union. It is equally well settled that the privilege of resorting to the Federal courts for litigation of rights in controversies between citizens of different States is created by and exercised under authority of the Constitution of the United States, which secures to citizens of another State, when sued by a citizen of a State in which the suit is brought, the absolute right to remove their cases into the Federal court upon compliance with the terms of the act of Congress enacted to effect that purpose. This principle was announced in terms in *Insurance Company* v. *Morse*, 20 Wall. 445, has never been questioned, and is affirmed in frequent decisions of this court. No state regulation in hostility to this principle can be recognized without endangering the supremacy of the National Constitution.

The Kentucky statute imposes but a single condition neces-

sary to be now considered upon the right of foreign corpora-
tions to do business in that State. It says in effect to a com-
pany not yet licensed to transact business within its borders,
there is no objection to the company transacting business in
this State; on the other hand, it is desirable that it shall do so,
subject to the condition that the company cease to do business
in the State and its license be revoked the moment it attempts
to avail itself of its constitutional right to remove a controversy
into the Federal court under the terms of the Federal statute
passed to make the constitutional right effectual. From that
time its further right to do business shall cease and determine
and its license be revoked. To companies lawfully within the
State, as are the appellants in these cases, it makes the like
proposition: You may carry on your business, having com-
plied with other conditions, but the moment you undertake
to exercise the constitutional right of removal to a Federal
court your license shall be revoked, and all authority to do
business in the State shall cease. That this can be constitu-
tionally done is affirmed in the decision of the court in these
cases, because of the principle that the State, having the right
to exclude foreign corporations from its borders, may do so
for any reason, although such action, as in the present case,
is based solely upon the denial of the right of removal in proper
cases by a non-resident citizen, of cases coming within the act
of Congress, to the Federal courts.

As a general proposition it is undoubtedly true that a State
may prevent foreign corporations, at least those not engaged
in interstate commerce, from doing business within its borders
and, may impose restrictions upon the right to transact local
business as it may see fit. But this right in our opinion is not
without limitation. It is the established doctrine of this court
that a restriction of this power is found in the denial of the right
to a State to impose a condition in direct conflict with the Con-
stitution of the United States, in requiring a corporation, as a
sole condition of doing business within the State, to surrender
the right of removal created and enforced by the Federal Con-

stitution and laws in advance, or give it up after its admission to do business in the State.

The question came directly before this court in the case of *Insurance Company* v. *Morse*, 20 Wall. 445, in which it was held that a State might not require a foreign corporation, as a condition of doing business within its borders, to file an agreement that such company would not remove the suit for trial into a United States Circuit Court or other Federal court. The act was held to be repugnant to the Constitution of the United States and the laws passed in pursuance thereof, as it denied the right of removal secured to the citizens of another State by the Constitution and laws of the United States. The question arose again in the case of *Doyle* v. *Continental Insurance Co.*, 94 U. S. 535. In that case it was held by the majority of the court, Mr. Justice Bradley, Mr. Justice Miller and Mr. Justice Swayne dissenting, that the State of Wisconsin might lawfully enact a statute providing that if any foreign insurance company should transfer a suit brought in the State to a Federal court its license to do business would be cancelled and revoked, and the doctrine was laid down that as a State had the right to exclude the company for any reason, the means by which it should cause such exclusion or the motives of her action were not the subjects of judicial inquiry. Thus the decisions of this court stood until the case of *Barron* v. *Burnside*, 121 U. S. 186, was brought to its attention, in which it was held that a statute of Iowa, requiring a foreign corporation, as a condition of doing business in the State, to stipulate that it would not remove cases into the Federal court, which it had the right under the laws of the United States to remove, was void. And the case of *Insurance Co.* v. *Morse, supra,* was approved, and *Doyle* v. *Continental Insurance Co., supra,* qualified and explained. In this case Mr. Justice Blatchford delivered the unanimous opinion of the court. It is apparent from its perusal that the principle stated in *Insurance Co.* v. *Morse* and in the dissenting opinion in the *Doyle* case was recognized and affirmed, and the unqualified right of exclusion denied. After

showing that the right to remove was the creation of the Federal Constitution and laws and could not be impaired without deprivation of a Federal right, the ground of the decision was stated to be:

"As the Iowa statute makes the right to a permit dependent, upon the surrender by the foreign corporation of a privilege secured to it by the Constitution and laws of the United States, the statute requiring the permit must be held to be void."

And further, in speaking of the *Doyle* case:

"The point of the decision seems to have been that, as the tate had granted the license, its officers would not be restrained y injunction, by a court of the United States, from withdrawng it. All that there is in the case beyond this, and all that is said in the opinion which appears to be in conflict with the adjudication in *Insurance Co.* v. *Morse,* must be regarded as not in judgment."

And that the court did not regard the right of a corporation in that respect as differing from that of an individual is shown in the observation:

"Its right, equally with any individual citizen, to remove into the Federal court, under the laws of the United States, such suits as are mentioned in the third section of the Iowa statute, is too firmly established by the decisions of this court to be questioned at this day; and the State of Iowa might as well pass a statute to deprive an individual citizen of another State of his right to remove such suits."

In concluding the decision the court said:

"In all the cases in which this court has considered the subject of the granting by a State to a foreign corporation of its consent to the transaction of business in the State, it has uniformly asserted that no conditions can be imposed by the State which are repugnant to the Constitution and laws of the United States. *La Fayette Ins. Co.* v. *French,* 18 How. 404, 407; *Ducat* v. *Chicago,* 10 Wall. 410, 415; *Insurance Co.* v. *Morse,* 20 Wall. 445, 456; *St. Clair* v. *Cox,* 106 U. S. 350, 356; *Phila. Fire Assn.* v. *New York,* 119 U. S. 110, 120."

It is thus apparent that the decision was made to turn, not upon the question of whether the agreement not to remove had been required in advance, or imposed as a condition of remaining in the State after entry therein, but rested upon the doctrine that, conceding the right of the State to exclude foreign corporations, its right to do business within the State could not be conditioned upon the surrender of a privilege secured to it by the Constitution and laws of the United States, and that the right to remove given to a foreign citizen or corporation was a right thus secured. The doctrine of *Barron* v. *Burnside* is in our judgment decisive of the contention made in the present case. If it be true, as specifically declared in that case, that the right to exclude a foreign corporation could not be made to depend solely upon the surrender by the foreign corporation of this constitutional right and privilege, it irresistibly follows that its application is fatal to the constitutionality of the statute here in question. The right of the insurance company under the present statute to do business within the State of Kentucky turns upon its willingness to surrender this privilege. If it will do so, it may continue to do business within the State; if it will not, its license will be revoked and its right to do local business destroyed. In short, it may continue to do business within the State, if it will consent to the surrender of a Federal right. We think this brings the case squarely within the limitations of the right of the State to exclude foreign corporations from its midst, and, to sustain the statute, permits a State, because of the exercise of a constitutional right, to close its gates to corporations equally entitled with private citizens in this respect to the protection given by the Constitution. The doctrine that the surrender of rights granted or secured by the Constitution of the United States may be made a condition of the privilege of doing or continuing business within a State is at war with that instrument, and if adopted or sanctioned by all the States would nullify the supreme law of the land in some of its most essential provisions.

An examination of the decisions subsequent to *Barron* v.

*Burnside, supra,* is convincing to the effect that it has been accepted by the courts, National and State, as decisive of the proposition therein announced, that a state statute giving the right to do business or to terminate a business already instituted, upon the sole condition of the surrender of a Federal right, secured by the Constitution, is void and of no effect. The case, thus interpreted, has been cited and followed in subsequent cases in this and other Federal courts.

In *Southern Pacific Co.* v. *Denton,* 146 U. S. 202, 207, Mr. Justice Gray, delivering the unanimous judgment of this court and referring to a statute of Texas similar to the one now under consideration, said: "That statute, requiring the corporation, as a condition precedent to obtaining a permit to do business within the State, to surrender a right and privilege secured to it by the Constitution and laws of the United States, was unconstitutional and void, and could give no validity or effect to any agreement or action of the corporation in obedience to its provisions," citing *Insurance Company* v. *Morse* and *Barron* v. *Burnside.* The same eminent judge, delivering again the unanimous judgment of this court in *Martin* v. *Baltimore & Ohio Railroad,* 151 U. S. 673, 684, and again citing the *Morse* and *Barron* cases, said: "The Baltimore and Ohio Railroad Company, not being a corporation of West Virginia, but only a corporation of Maryland, licensed by West Virginia to act as such within its territory, and liable to be sued in its courts, had the right under the Constitution and laws of the United States, when so sued by a citizen of this State, to remove the suit into the Circuit Court of the United States; and could not have been deprived of that right by any provision in the statutes of the State." Again, upon the authority of the same cases, including the *Denton* case, this court, by its unanimous judgment in *Barrow Steamship Co.* v. *Kane,* 170 U. S. 100, 111, said: "So statutes requiring foreign corporations, as a condition of being permitted to do business within the State, to stipulate not to remove into the courts of the United States suits brought against them in the courts of the

State, have been adjudged to be unconstitutional and void."
To the same effect was the case of *Blake* v. *McClung*, 172 U. S.
239, 255, 256, in which it was said, upon the authority of the
*Morse, Barron* and *Denton* cases: "It was accordingly adjudged
in *Barron* v. *Burnside*, 121 U. S. 186, 200, that an Iowa statute
requiring every foreign corporation named in it, as a condition
of obtaining a license or permit to transact business in that
State, to stipulate that it would not remove into the Federal
courts suits that were removable from the state courts under
the laws of the United States, was void because it made the
right to do business under a license or permit dependent upon
the surrender by the corporation of a privilege secured to it
by the Constitution. . . . So statutes requiring foreign
corporations, as a condition of being permitted to do business
within the State, to stipulate not to remove into the courts of
the United States suits brought against them in the courts
of the State, have been adjudged to be unconstitutional and
void." In *Chattanooga, R. & C. R. Co.* v. *Evans*, 66 Fed. Rep.
809, 814, heard before Judges Taft, Lurton and Severens, the
Circuit Court of Appeals for the Sixth Circuit, speaking by
Judge Lurton and referring to the *Morse* and *Barron* cases,
recognized the right of the State to prescribe terms upon which
a corporation of another State or country may carry on busi-
ness within its borders, but taking care at the same time to
say: "That there are limitations upon this power is equally
well settled, for it cannot impose as a condition that such non-
resident corporation shall not resort to the courts of the United
States."

In *Bigelow* v. *Nickerson*, 70 Fed. Rep. 113, Judge Jenkins,
speaking for the Circuit Court of Appeals, Seventh Circuit,
after reviewing the cases in this court, said:

"We consider the question foreclosed, and no longer open to
discussion. No condition imposed upon a right granted by
a State, which prevents one from availing himself of his con-
stitutional prerogative of appeal to the courts of the United
States can be upheld."

. In *Reimers* v. *Seatco Manufacturing Co.*, 70 Fed. Rep. 573, Judge Taft, speaking for the Circuit Court of Appeals, Sixth Circuit, said:

" The right of a State to impose conditions upon foreign corporations doing business therein is not unlimited. In *Insurance Co.* v. *French*, 18 How. 404, Mr. Justice Curtis, speaking for the Supreme Court said:

" 'A corporation created by Indiana can transact business in Ohio only with the consent, express or implied,' of the latter State. *Bank* v. *Earle*, 13 Pet. 519. This consent may be accompanied by such conditions as Ohio may think fit to impose, and these conditions must be deemed valid and effectual by other States and by this court, provided they are not repugnant to the Constitution or laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each State from encroachment by all others, or that principle of natural justice which forbids condemnation without opportunity for defense.'

" In *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, it was held that the law which permitted a non-resident corporation to do business within its territory on condition that it should forfeit such permit if it removed a suit brought against it into the court of the United States held within the State, was unconstitutional and void, and could give no validity and effect to any agreement or action of the corporation in obedience to its provisions, because it thereby was compelled to surrender a right and privilege secured to it by the Constitution and laws of the United States; citing *Insurance Co.* v. *Morse*, 20 Wall. 445, and *Barron* v. *Burnside*, 121 U. S. 186."

Notwithstanding these cases, it is now adjudged that so far as the Constitution of the United States is concerned, it is competent for any State to withdraw or cancel a license given to a corporation of another State to do business within its limits whenever and solely because that corporation, being sued in a state court, has the case removed to the Federal court for trial or hearing. If each State should enact a statute, such as the

one before us, the right secured to a corporation when sued in the courts of a State other than the one creating it, to invoke the jurisdiction of the Federal court, would be abrogated throughout the whole United States, although such right is secured by the Constitution and by valid acts of Congress. We cannot assent to this view. It amounts to a practical nullification in respect to such corporations of the supreme law of the land and places important constitutional rights at the mercy of the several States.

In the State from which this case comes, after a full review of the decisions of this court, the same conclusion was reached in *Commonwealth* v. *East Tenn. Coal Co.*, 97 Kentucky, 238.

The same view of the effect of *Barron* v. *Burnside* has been accepted by the text-writers. 2 Cook on Corporations, 3d ed. 1675; Moon, Removal of Causes (1901), §§ 30 and 31, and notes in which the author expresses the view that the *Doyle* case has become obsolete and is practically overruled by *Barron* v. *Burnside* and subsequent cases in this court, § 30, note 3; Curtis' Jurisdiction of the United States Courts, 2d ed. by Merwin, 187.

The principles announced in *Doyle* v. *Ins. Co.* and *Barron* v. *Burnside* are directly opposed the one to the other, and cannot both prevail. The former case was decided upon the principle that as the State has the full right to exclude a foreign corporation it may do so for any reason or for no reason. The latter case qualified this doctrine with the limitation that the exclusion may not be solely because the corporation was exercising or would not yield the right to avail itself of a privilege created and protected by the Federal Constitution.

After such repeated affirmance and general acceptance, we do not think the doctrine announced in *Barron* v. *Burnside* ought to be qualified or detracted from, and certainly it seems to us that the court should not return to the rejected doctrine of the *Doyle* case.

If a State may lawfully withhold the right of transacting business within its borders or exclude foreign corporations from

the State upon the condition that they shall surrender a constitutional right given in the privilege of the companies to appeal to the courts of the United States, there is nothing to prevent the State from applying the same doctrine to any other constitutional right, which, though differing in character, has no higher or better protection in the Constitution than the one under consideration. If the State may make the right to transact business dependent upon the surrender of one constitutional privilege, it may do so upon another, and finally upon all. In pursuance of the principle announced in this case, that the right of the State to exclude, includes the right, when exercised for any reason or for no reason, the State may say to the foreign corporation,—You may do business within this State, provided you will yield all right to be protected against deprivation of property without due process of law; or provided you surrender your right to have compensation for your property when taken for private use, or provided you surrender all right to the equal protection of laws; and so on through the category of rights secured by the Constitution and deemed essential to the protection of people and corporations living under our institutions. This dangerous doctrine, asserted in the majority opinion in the *Doyle* case, destroyed and overthrown as we think in *Barron* v. *Burnside*, which latter case has been consistently and repeatedly followed in this court and in other courts, Federal and State, from that day to this, ought not now to be rehabilitated and restored to its power to work destruction of rights deemed so essential to the safety of citizens, natural and artificial, that they have been secured by the provisions of the Federal Constitution.

In the opinion of the court in this case the doctrine that a corporation cannot be permitted to be deprived of its right to do business because of the assertion of a Federal right is said not to be denied, because the right of a foreign corporation to do business in a State is not secured or guaranteed by the Federal Constitution. Conceding the soundness of this general proposition, it by no means follows that a foreign corpora-

tion may be excluded solely because it exercises a right secured by the Federal Constitution. For, conceding the right of a State to exclude foreign corporations, we must not overlook the limitation upon that right, now equally well settled in the jurisprudence of this court, that the right to do business cannot be made to depend upon the surrender of a right created and guaranteed by the Federal Constitution. If this were otherwise, the State would be permitted to destroy a right created and protected by the Federal Constitution under the guise of exercising a privilege belonging to the State, and, as we have pointed out, the State might thus deprive every foreign corporation of the right to do business within its borders, except upon the condition that it strip itself of the protection given it by the Federal Constitution. Furthermore, it is stated in the prevailing opinion that while the State may exclude in advance or deprive a foreign corporation of the privilege of doing business after it is lawfully in the State, because of the exercise of a Federal right, it cannot require the corporation to agree in advance that it will waive such right, as that, it is admitted, would be unconstitutional.

We think the distinction is without a substantial difference and makes the validity of the act turn upon the means of attaining the same unlawful end. In either alternative the corporation is excluded from the State because it will not consent to surrender the right given it under the Federal Constitution. While we concede the right of a State to exclude foreign corporations from doing business within its borders for reasons not destructive of Federal rights, we deny that the right can be made to depend upon the surrender of the protection of the Federal Constitution, which secures to alien citizens the right to resort to the courts of the United States.

In the cases decided in this court subsequently to *Barron* v. *Burnside*, while the general proposition is affirmed that a State may prescribe conditions upon which a foreign corporation may do business within its borders, in no one of them is it asserted that the State may exclude or expel such corporations because

they insist upon the exercise of a right created by the Federal Constitution. On the contrary, this court has repeatedly said that such right of exclusion was qualified by the superior right of all citizens to enjoy the protection of the Federal Constitution. · The Federal authority gives no right to deny to the citizens of a State access to the local courts of a State. For wise purposes the Federal Constitution has provided courts for citizens of different States, believed to be free from local influence and prejudice, and laws have been passed by Congress to make the privilege of resort to them effectual. In our view no state enactment can lawfully abridge this right or destroy it, directly or indirectly, by affixing heavy penalties to its assertion by those lawfully entitled to its enjoyment. We think *Barron* v. *Burnside* was intended to overrule the contrary declaration which is found only in the *Doyle* case, which is inconsistent with or opposed to every other declaration directly upon the subject in the opinions of this court.

We are of opinion that the statute in question, so far as it authorizes the cancellation of a license given by a State to a corporation to do business within its limits, whenever such corporation, in the exercise of a constitutional right, has a suit brought against it in a state court removed to the Federal court for trial, is unconstitutional and void.

For the reasons stated we are constrained to dissent.