## SOUTHERN BELL TELEPHONE & TELEGRAPH CO. v. TOWN OF CAL-HOUN et al.

(District Court, W. D. South Carolina. February 23, 1923.)

**1. Injunction ⊗═85(2)—Suit to restrain enforcement of act is proper remedy to test constitutionality.**

A suit by a telephone company to restrain the enforcement of a joint resolution of the state Legislature, requiring it to install and maintain certain exchanges, and imposing penalties for each day's refusal to do so, is a proper course to test the validity of the enactment before any of the penalties provided for have been incurred.

**2. Constitutional law ⊗═45—Court should not declare state act unconstitutional, unless charged with duty to do so.**

Declaring void an act of the General Assembly of the state is a matter requiring unusual consideration on the part of the court, and the authority to do so should not be exercised, unless the court is both vested with the power and charged with the duty to take such action.

**3. Constitutional law ⊗═251—Requirement of due process of law should be liberally construed.**

In view of the importance of Const. U. S. Amend. 14, guaranteeing a citizen against being deprived of his property without due process of law, to protect the citizens against arbitrary governmental action, it should be liberally construed.

**4. Constitutional law ⊗═45—Federal court is charged with duty of upholding Fourteenth Amendment to extent of declaring state act void.**

When a right guaranteed under Const. U. S. Amend. 14, and under corresponding sections of the state Constitutions has been violated, the federal court is not only vested with the power, but is charged with the duty of protecting that right, even to the extent of declaring unconstitutional an enactment of the state Legislature.

**5. Telegraphs and telephones ⊗═26—Telephone company subject to reasonable regulation.**

A telephone company is a public service corporation invested by law with certain immunities and privileges necessary to the transaction of its business, and correspondingly subjected to all reasonable regulations which the law may prescribe, and it must discharge its duties to the full limit of the obligations imposed by its charter, franchises, or contracts.

**6. Constitutional law ⊗═206(7)—Fourteenth Amendment does not prevent extensive regulation of corporations.**

Const. U. S. Amend. 14, does not prevent the state from exercising very extensive power in the regulation, taxation, and policing of the business of a corporation, but permits a single foreign corporation to

⊗═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be expelled from the state by a special act, and permits classification for the purposes of taxation to be resorted to.

**7. Constitutional law ⬩⟹81—Statutes under police power may be harsh and oppressive without violating Constitution.**

In the matter of police regulation, the powers of the state are exceedingly broad, and laws enacted for that purpose may be impolitic, harsh, and oppressive without contravening the constitutional inhibition.

**8. Constitutional law ⬩⟹206(7)—State cannot single out corporation, and impose burdens on it not imposed on others similarly situated.**

A state Legislature cannot single out a corporation, any more than a · natural person, and subject it to burdens and liabilities which are not cast on others · similarly situated, without contravening the limitations of the Fourteenth Amendment.

**9. Constitutional law ⬩⟹296(1)—Telegraphs and telephones ⬩⟹14½—Requirement named · telephone company shall construct designated exchanges held void.**

The joint resolution of the South Carolina Legislature approved April 3, 1922 (32 St. at Large, p. 1530), requiring the Southern Bell Telephone & Telegraph Company to construct and maintain telephone exchanges in two designated towns, when there were numerous other telephone companies in the state, and the designated company was not obliged by its charter, franchise, or contract to construct such exchanges, deprives the company of its property without due process of law, and is void.

**10. Eminent domain ⬩⟹2(1)—Requiring telephone company to construct and maintain exchanges takes property without compensation.**

A joint resolution requiring a named telephone company to construct and maintain telephone exchanges at two designated towns, which it was not required to maintain by any provision of its charter or franchise, or by any contract, takes the property of the corporation without just compensation, contrary to Const. S. C. art. 1, § 17.

In Equity. Suit by the Southern Bell Telephone & Telegraph Company against the Town of Calhoun and others to enjoin the enforcement of a joint resolution of the state Legislature. Injunction granted as prayed.

Hagood, Rivers & Young, of Charleston, S. C., Grier & Park, of Greenwood, S. C., and Bonham & Price, of Greenville, S. C., for complainant.

WATKINS, District Judge. The General Assembly of South Carolina at its session in 1922 enacted the following joint resolution (32 Statutes at Large, p. 1530):

"A joint resolution to require the Southern Bell Telephone & Telegraph Company to furnish and maintain telephone service to the citizens of Calhoun, S. C., and Clemson College, S. C.

"Section 1. *Southern Bell Telephone & Telegraph Company to furnish service at Calhoun and Clemson College.*—Be it resolved by the General Assembly of the state of South Carolina: That the Southern Bell Telephone & Telegraph Company be, and it is hereby, required within six months after the approval of this act, to furnish and maintain a telephone exchange for local and long distance service for the benefit and convenience of the citizens of the towns of Calhoun, S. C., and Clemson College, S. C., and the territory immediately surrounding in Oconee and Pickens counties.

"Sec. 2. *Penalty for Failure to Comply.*—That the said Southern Bell Telephone & Telegraph Company shall be liable to a penalty of ten ($10.00)

⬩⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dollars for each day of neglect or failure to comply with the requirements of this act after the expiration of the six months from the approval of this act, to be recovered at the suit of any person aggrieved by such failure, refusal or neglect.

"Sec. 3.    This act shall take effect immediately upon its approval by the Governor.

"Sec. 4.    All acts or parts of acts inconsistent herewith are hereby repealed.

"Approved the 3d day of April, A. D. 1922."

Plaintiff brings this suit in equity to restrain the defendants and all other persons interested, as the defendants are brought into court as representatives of the class, from enforcing the provisions of this joint resolution. All the defendants were legally served and have defaulted. The allegations of the bill must therefore be taken as true, pro confesso, against them.

The bill was filed, and after due notice to the defendants, before the expiration of the six months' limitation provided in the joint resolution, an order was granted by the court temporarily restraining the enforcement of the provisions of the joint resolution. Plaintiff is now seeking a permanent injunction. The essential facts established by the bill, in addition to the necessary jurisdictional allegations, may be briefly summed up as follows:

There were at the time of the enactment of the joint resolution 112 companies, individuals, or associations in South Carolina, other than plaintiff, engaged in the telephone business. Plaintiff is under no franchise, charter, contractual, or other legal obligation to maintain an exchange for the telephone service provided in the resolution, and has not owned and does not own, maintain, or operate, nor has expressed its willingness to operate, such an exchange. The construction of such exchange will require a capital expenditure of upwards of $10,000, and the maintenance thereof a continuing outlay of money. Plaintiff alleges that the resolution is void, in that it contravenes the provisions of the Fourteenth Amendment of the Constitution of the United States, because it deprives plaintiff of its property without due process of law, and denies it the equal protection of the laws, and also because it contravenes section 17 of article 1 of the Constitution of South Carolina, which provides that:

"Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor."

[1] There can be no question that plaintiff has pursued the proper course in thus seeking to test the validity of the legislative enactment before any of the penalties therein provided for have been incurred. Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Willcox v. Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034; Wadley Southern Railway Co. v. Georgia, 235 U. S. 651, 35 Sup. Ct. 214, 59 L. Ed. 405. In the Willcox Case the court said:

"At the outset it seems to us proper to notice the views regarding the action of the court below, which have been stated by counsel for the appellants, the Public Service Commission, in their brief in this

court. They assume to criticize the court for taking jurisdiction of this case, as precipitate, as if it were a question of discretion or comity, whether or not that court should have heard the case. On the contrary, there was no discretion or comity about it. When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction (Cohen v. Virginia, 6 Wheat. 264, 404, 5 L. Ed. 257), and in taking it that court cannot be truthfully spoken of as precipitate in its conduct. That the case may be one of local interest only is entirely immaterial, so long as the parties are citizens of different states or a question is involved which by law brings the case within the jurisdiction of a federal court. The right of a party plaintiff to choose a federal court, where there is a choice, cannot be properly denied."

In the Wadley Southern Railway Company Case, the language of the court is as follows:

"If the Wadley Southern Railway Company had availed itself of the right [the right to test the validity of the requirement in a judicial proceeding] and with reasonable promptness had applied to the court for a judicial review of the order, and if, on such hearing, it had been found to be void, no penalties could have been imposed for past or future violations. If in that proceeding the order had been found to be valid, the carrier would thereafter have been subject to penalties for any subsequent violations of what had thus been judicially established to be a lawful order, though not so in respect to violations prior to such adjudication. But where, as here, after reasonable notice of the making of the order, the carrier failed to resort to the safe, adequate, and available remedy by which it could test in the courts its validity, and preferred to make its defense by attacking the validity of the order when sued for the penalty, it is subject to the penalty when that defense, as here, proved to be unsuccessful."

See, also, Southwestern Telegraph & Telephone Co. v. Danaher, 238 U. S. 482, 35 Sup. Ct. 886, 59 L. Ed. 1419, L. R. A. 1916A, 1208; St. Louis, Iron Mountain & Southern Railway Co. v. Williams et al., 251 U. S. 63, 40 Sup. Ct. 71, 64 L. Ed. 139.

[2, 3] Although the plaintiff has pursued the proper course for the determination of its rights, the subject of declaring void an act of the General Assembly of a sovereign state is one of such solemn and weighty character as to require unusual consideration upon the part of the court. Such authority should not be exercised unless the court is both vested with the power and charged with the duty of such action. In the instant case, the intervention of the court appears to be equally within the scope of its power and the range of its duty. It is an essential characteristic of a democratic government that its citizens shall equally enjoy the protection of its laws, and that no one shall be deprived of his property without due process of law. Any form of government, therefore, in which an opposite policy prevails or is permitted, is by such fact, in the universal estimation of mankind, characterized as arbitrary and despotic. It is true that theoretically at least a democracy may enact laws as discriminatory and tyrannical as an absolute monarchy, and the modern world is not without striking and tragic examples thereof. Happily, however, a different system prevails in America, and constitutional barriers have been erected by state and nation against any governmental exercise of unfair discrimination against any citizen and against arbitrary confiscation of his property. The duty of protecting all its citizens in the enjoyment of

an equality of rights was assumed by each state upon the adoption of its Constitution, and by the Fourteenth Amendment to the United States Constitution it was further agreed by each state that the general government should be vested with the supreme power to protect the citizen against the invasion by any state of this pre-existing right. Civil Rights Cases, 109 U. S. 3, 13, 3 Sup. Ct. 18, 27 L. Ed. 835. And it may be stated that no provision of the original Constitution is more in harmony, than this amendment, with the supreme purpose of that compact as expressed in its preamble:

" * * * to establish justice, insure domestic tranquility * * * pro-. mote the general welfare and secure the blessings of liberty."

There was a time when no individual right of property was recognized or existed, but only at and before the dawn of history, when man was an untutored savage. Later on property was taken without due process of law at the will of the strongest, at a time when might overrode right, but only when tyrants or robber barons assumed the prerogatives of unrestrained and unconstitutional government. Fortunately, such things have not been encountered under our government, however wildly they may be advocated by a certain type of our own citizens and by unrestrained aliens now permitted at large in our midst.

[4] It is apparent that the progress of society demands the proper safeguarding of property as a stimulant to individual initiative and ambition, and it must be even more apparent that individual liberty requires that each person have the equal protection of the laws, both as to his person and as to his property. A provision of the Constitution, therefore, having in view so important and so humane an object, should be liberally construed, and has been uniformly so construed by our Supreme Court. It is evident, therefore, that when a right, guaranteed to a citizen under this section of the federal Constitution and under corresponding sections of the state constitutions, has been violated, the court is not only vested with the power but equally charged with the duty of protecting that right, even to the extent of declaring unconstitutional an enactment of the state Legislature. Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220. "No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights, which is the foundation of free government." Gulf, Colorado & Santa Fé Railway Co. v. Ellis, 165 U. S. 150, 159, 17 Sup. Ct. 255, 41 L. Ed. 666. See, also, Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037. In Ex parte Young, 209 U. S. 123, 143, 28 Sup. Ct. 441, 447 (52 L. Ed. 714, 13 L. R. A. [N. S.] 932, 14 Ann. Cas. 764) the court said: "We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given." The discharge of this obligation should be attended with the most mature deliberation upon the part of the court and with a profound sense of the respect which should be accorded to the legislative will.

[5] In the case under consideration, it must be borne in mind that the plaintiff is a public service corporation invested by law with certain immunities and privileges necessary to the transaction of its business, and correspondingly subjected to all reasonable regulations which the law may prescribe. Its duties must be discharged to the full limit of its obligations, and it may not escape any obligations imposed by the terms of its charter, franchises, or contracts. In the extension of corporate privileges and corresponding increase of corporate obligations under legislative grants, it is sometimes difficult to draw the line of demarcation between proper legislative regulations and unlawful confiscation. This line of demarcation is frequently drawn with difficulty by courts of vast learning and experience, and naturally it may be more difficult of determination at the hands of a less experienced legislator, unversed in the science of the law. When, therefore, as in this case, legislation has transgressed the boundary of the Constitution, it should be naturally attributed rather to failure of discrimination than to intentional injustice.

[6, 7] It has been uniformly held that the limitations provided by the Fourteenth Amendment of the federal Constitution do not preclude the state from exercising very extensive power in the way of regulating, taxing, and policing the business of a corporation. A single foreign corporation may be expelled from a state by a special act, or it may thereby be restricted in a more limited way. Security Mutual Life Ins. Co. v. Prewitt, 202 U. S. 246, 26 Sup. Ct. 619, 50 L. Ed. 1013, 6 Ann. Cas. 317; National Council v. State Council, 203 U. S. 151, 27 Sup. Ct. 46, 51 L. Ed. 132; Doyle v. Continental Ins. Co., 94 U. S. 535, 24 L. Ed. 148. Classification may be resorted to for the purposes of taxation, and great latitude is permitted in the exercise of the taxing power. Merchants' Bank v. Pennsylvania, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236; Bell's Gap Railroad Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892; Kentucky Railroad Tax Cases, 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414; Connolly v. Union Sewer Pipe Company, 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; Cook v. Marshall County, 196 U. S. 261, 25 Sup. Ct. 233, 49 L. Ed. 471. In the matter of police regulation the powers of the state are exceedingly broad, and laws enacted for this purpose may be even impolitic, harsh, and oppressive without contravening the constitutional inhibition. Mobile County v. Kimball, 102 U. S. 691, 26 L. Ed. 238; Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394.

[8] When, however, a person, natural or artificial, is singled out by the Legislature of the state, and subjected to burdens and liabilities which are not cast upon others similarly situated, the intervention of the Constitution may be relied upon. Clear and hostile discriminations against particular persons and classes, especially such as are of unusual character, and unknown to the practice of our governments, are forbidden. Halter v. Nebraska, 205 U. S. 34, 27 Sup. Ct. 419, 51 L. Ed. 696, 10 Ann. Cas. 525; Gulf, etc., Railway Company v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666; Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; Crowley v. Christensen, 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620; Pembina, etc., Mining & Milling

Company v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650; American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 21 Sup. Ct. 43, 45 L. Ed. 102. It is especially held that power to enact special legislation cannot be based upon the mere fact that the thing affected is a corporation, even when the Legislature has power to alter, amend, or repeal the charter thereof. This power does not extend to the taking of the property of the corporation by confiscation, or indirectly by other means, nor to the right to deny such corporation the equal protection of the laws. Lake Shore, etc., Railway Company v. Smith, 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858. In the case of Pennsylvania Railroad Co. v. Public Service Commission, 250 U. S. 568, 40 Sup. Ct. 37, 63 L. Ed. 1142, the court uses the following language:

"But, whatever powers a state may deny to its commissions, it cannot give them power to do what the laws of the United States forbid, whether they call their action administrative or judicial. * * * We pass to the merits of the case. If all that had been done on behalf of the United States in the way of regulation had been to determine how mail cars should be built, and to exclude a 30-inch platform, it might be said that the state law could be obeyed by putting a different car at the end of the train. It would be a tax upon the railroad when the company wished to run a mail train wholly made up of mail cars, but it could be done, and it is not necessary to say that the state could not require it. But when the United States has exercised its exclusive powers over interstate commerce, so far as to take possession of the field, the states no more can supplement its requirements than they can annul them. Southern Ry. Co. v. Railroad Commission of Indiana, 236 U. S. 439, 446; Charleston & Western Carolina Ry. Co. v. Varnville Furniture Company. 237 U. S. 597, 604; New York Central R. R. Co. v. Winfield, 244 U. S. 147."

The case of Cotting v. Kansas City Stockyards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, appears to be conclusive that, where a corporation is singled out, eo nomine, from all others, and charged with a large expenditure of money, and with other burdens not placed upon all others similarly situated, it is thereby subjected to an inequality of law and a taking of its property without due process of law, in contravention of the constitutional guaranty. That case quotes with approval from Cooley's Constitutional Limitations (5th Ed.) 484, 486, as follows:

"Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments. Those who make the laws 'are to govern by promulgated established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plow.' This is a maxim in constitutional law, and by it we may test the authority and binding force of legislative enactments."

The court further said:

"The question thus presented is of profoundest significance. Is it true in this country that one who by his attention to business, by his efforts to satisfy customers, by his sagacity in discerning the probable courses of trade, and by contributing of his means to bring trade into those lines, succeeds in building up a large and profitable business, becomes thereby

a legitimate object of the legislative scalping knife? Having created the facilities which the many enjoy, can the many turn around and say. you are making too much out of those facilities, and you must divide with us your profits. * * * Every partial or private law, which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were this otherwise, odious individuals and corporate bodies would be governed by one rule, and the mass of the community, who made the law, by another."

See, also, Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. Ed. 923; Ex parte Young, 209 U. S. 143, 147, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Oklahoma Operating Co. v. Love et al., 252 U. S. 331, 40 Sup. Ct. 338, 64 L. Ed. 596; Missouri Pacific Ry. Co. v. Tucker, 230 U. S. 340, 349, 33 Sup. Ct. 961, 57 L. Ed. 1507; Wadley Southern Railway Co. v. Georgia, 235 U. S. 651, 662, 35 Sup. Ct. 214, 59 L. Ed. 405.

The language of the Supreme Court in the case of N. P. Ry. v. North Dakota, 236 U. S. 585, 35 Sup. Ct. 429, 59 L. Ed. 735, L. R. A. 1917F, 1148, Ann. Cas. 1916A, 1, is very apt. It says:

"Broad as is the power of regulation, the state does not enjoy the freedom of an owner. The fact that the property is devoted to a public use on certain terms does not justify the requirement that it shall be devoted to other public purposes, or to the same use on other terms, or the imposition of restrictions that are not reasonably concerned with the proper conduct of the business according to the undertaking which the carrier has expressly or impliedly assumed. If it has held itself out as a carrier of passengers only, it cannot be compelled to carry freight. As a carrier for hire it cannot be required to carry persons or goods gratuitously. The case would not be altered by the assertion that the public interest demanded such carriers. The public interest cannot be invoked as a justification for demands which pass the limits of reasonable protection and seek to impose upon the carrier and its property burdens that are not incident to its enjoyment."

See, also, C., M. & St. P. Ry. Co. v. Wisconsin, 238 U. S. 491, 35 Sup. Ct. 869, 59 L. Ed. 1423, L. R. A. 1916A, 1133; Washington v. Fairchild, 224 U. S. 510, 32 Sup. Ct. 535, 56 L. Ed. 863.

In many ways the case of A., T. & S. F. Ry. Co. v. Railroad Commission, 173 Cal. 577, 160 Pac. 828, 2 A. L. R. 975, is very like the present case. There the Railroad Commission sought to compel the company to construct a line of railroad between two points where it had no line at that time. The court said:

"The issue to be determined is this: Has the Railroad Commission authority to require a railroad company to extend its line of railroad, or to build a new line, so as to connect with its existing line points that have not theretofore been connected and which the company has not undertaken to so connect? * * * The solution of the problem thus presented must be found in a definition of the character of the order complained of. Is the Railroad Commission, in ordering the construction of a railroad line, regulating the service which the petitioner has undertaken to give to the public, or is it compelling the railroad company to dedicate its property to a new service? If the former, the Commission is acting within its jurisdiction; if the latter, it is attempting to exercise an authority which the statute either has not attempted or is unable to confer upon it. Section 36 of the Public Utilities Act authorizes the Commission to make an order directing that 'additions, extensions,' etc., be made in the plant or facilities of any public utility. It might be argued that

this language is broad enough to include additions to the plant, even though such additions may involve a service never contemplated nor undertaken by the owner of the utility. But if this is to be taken to be the true meaning, the section expresses an intent which cannot, under the restrictions of the federal Constitution, be given effect. As was said by Henshaw, J., in Pacific Telephone & Telegraph Co. v. Eshleman, 166 Cal. 640, 665, 137 Pac. 1119, 1128, 50 L. R. A. (N. S.) 652, Ann. Cas. 1915C, 882: 'It may not be amiss to point out that the devotion to a public use by a person or corporation of property held by them in ownership does not destroy their ownership and does not vest title in the property in the public so as to justify, under the exercise of police power, the taking away of the management and control of the property from its owners without compensation, upon the ground that public convenience would be better served thereby, or that the owners themselves have proven false or derelict in the performance of their public duty.' * * * A public utility, undertaking to supply a given public need, submits itself to the regulation and control of public authority with respect to the service which it has thus undertaken. * * * But to require a public utility to devote its property to a service which it has never professed to render is to take that property, pro tanto, and such taking cannot be justified except under the power of eminent domain—i. e., upon just compensation."

[9] The act in question can in no sense be termed, nor indeed does it purport to be, an act merely to regulate the business of the plaintiff, nor a taxing, nor a police measure. It is a bald attempt to require plaintiff to enter a new field of operation to establish a business in a new territory which it has not heretofore entered or sought to enter, to invest its capital at places and under conditions, which neither its own desire nor the requirements of its charter, franchises, or contractual obligations in any way require. If such a principle could prevail, the plaintiff could be forced to maintain its exchanges on every hill and every mountain top in the state, however remote from the activities of business, and however ruinous to its enterprise. The power to regulate in proper cases must not be confounded with the power arbitrarily to destroy. It would be hard to conceive of anything more destructive of business enterprise and progress, or more calculated to disturb the confidence of the individual in the security of his property and in the equal protection of the laws than to sustain such legislation.

[10] The joint resolution is not only void, as repugnant to the Fourteenth Amendment to the Constitution of the United States, but is equally violative of section 17 of article 1 of the Constitution of the state of South Carolina. The case of Mays v. Railway Co., 75 S. C. 455, 56 S. E. 30, is conclusive upon that point. In that case the Supreme Court of South Carolina declared unconstitutional an act of the Legislature which required railroad companies to build industrial side tracks to connect industrial enterprises with their main lines, so as to deliver and receive freight therefrom in carload lots, the cost to be paid by the enterprises in the first instance and then repaid by the company in annual installments of 20 per cent. of their freight receipts. The state Supreme Court held that the act was violative of the Fourteenth Amendment of the United States Constitution and of sections 15 and 17 of article 1 of the state Constitution.

I am clearly of opinion that the plaintiff is entitled to the injunc-

tion prayed for in its complaint, and its attorneys may submit a formal order for the continuance of the injunction in accordance with the terms of this opinion.